MAJIQUE FASHIONS, LTD., Appellant, v WARWICK & COMPANY
LIMITED, Respondent, et al., Defendants.

First Department, April 5, 1979

### APPEARANCES OF COUNSEL

*Arnold J. Ross* of counsel *(Goldfeld, Charak & Ross,* attorneys), for appellant.

*Michael Burrows* of counsel *(Claudia J. Gilman* with him on the brief; *Baker & McKenzie,* attorneys), for respondent.

### OPINION OF THE COURT

LUPIANO, J.

This action, insofar as defendant Warwick & Company Limited is concerned, was commenced on November 22, 1976 by the issuance of an ex parte order of attachment against the property of said defendant. Defendant Warwick concedes that on November 23, 1976, plaintiff attached assets belonging to defendant, to wit, $74,000 in two checking accounts maintained by Warwick in its name at the French-American Banking Corp. in New York County. The summons and complaint were served on Warwick in Seoul, Korea, and it thereafter answered on February 22, 1977. Plaintiff served its reply to this answer on March 31, 1977.

In the complaint, plaintiff alleges in respect of Warwick that in connection with plaintiff's entering into an agreement with two Korean manufacturing corporations (Republic of Korea) of certain goods (ladies' wearing apparel), it was necessary to open for plaintiff's account a letter of credit with Chase Manhattan Bank in the sum of $300,000, which letter of credit provided, *inter alia,* that Chase would pay drafts issued by plaintiff in payment for the goods drawn against Chase up to the aggregate sum of $300,000 upon specific terms and conditions delineated in the letter of credit. As is customary with this type of commercial transaction involving as it normally does international commerce, the agreement between plaintiff and the Korean manufacturers provided for a "certified certificate of inspection on [plaintiff's] stationery signed by authorized agent stating shipment is in accordance with contract and conforming to counter sample specification and quality." Such certificate of inspection is also customarily required within the terms of the letter of credit as one of the documents necessary for the bank to honor the letter of credit and to disburse the funds to the seller, the Korean manufac-

turers, thereby debiting plaintiff's account for such disbursal. Accordingly, plaintiff entered into an agreement with defendant Warwick whereby the latter undertook to be plaintiff's agent with respect to the inspection of the goods in Korea and the issuance of the customary certificate of inspection required by the contract between the purchaser (plaintiff) and the sellers (the manufacturers) and by the letter of credit.

Plaintiff specifically avers that its agent Warwick breached the agency agreement by either failing to inspect or, if it did inspect, by improperly inspecting the goods with the consequence that the inspection certificate issued by defendant Warwick did not afford plaintiff the protection it was entitled to and occasioned damage to plaintiff, the goods not being manufactured in accordance with the contract between plaintiff and the two Korean manufacturers. In a second cause of action against Warwick, plaintiff alleges that Warwick "with the intent to defraud the plaintiff, issued fraudulent and improper certificates of inspection" and that "[b]ased upon the certificates of inspection * * * Chase Manhattan paid to [the sellers, the Korean manufacturers] a sum of money."

In its answer defendant Warwick, a Hong Kong corporation, alleges as a third affirmative defense the lack of the court's jurisdiction over it "pursuant to the provisions of both CPLR 3211(a)8 and CPLR 3211(a)9." It should be noted that we are not concerned here with lack of subject matter jurisdiction (CPLR 3211, subd [a], par 2) which is unwaivable, but with lack of personal jurisdiction and lack of in rem jurisdiction. On or about April 4, 1978, defendant Warwick moved pursuant to CPLR 3211 (subd [a], pars 8, 9) for an order dismissing plaintiff's action as to it on the ground the court lacks jurisdiction over it which motion was granted by Special Term. From a procedural point of view, there is a problem since the objection to personal or rem jurisdiction is waivable, and when taken by a dismissal motion pursuant to CPLR 3211 (subd [a]) as distinct from incorporation as an affirmative defense in an answer, must be made before the time to answer expires[1] (see *Wahrhaftig v Space Design Group,* 29 AD2d 699). Professor David D. Siegel in the 1978-1979 Supplementary Practice Commentaries to CPLR 3211 (McKinney's Cons Laws

---

1. CPLR 3211 (subd [e]) provides in pertinent part that "[a]t any time before service of the responsive pleading is required, a party may move on one or more of the grounds set forth in subdivision (a), and no more than one such motion shall be permitted."

of NY, Book 7B, C3211:52, p 9) suggests that the view adopted in *Salerno v Kearney* (87 Misc 2d 995 wherein the court held that a CPLR 3211 (subd [a], par 8) motion to dismiss was properly submitted although after the time to answer had expired because the defendant had interposed the objection in the answer theretofore served, "should be the prevailing one today." Professor Siegel predicates his view on the ground that "[s]ince 3212 is now available to do just about everything a 3211 motion could do in respect of a 3211(a) ground, the *Salerno* case is the more realistic holding today." However, while the Legislature has amended 3212 to embrace in large measure 3211 relief, it has continued to limit treatment of a 3211 motion as a motion for 3212 relief only where the court has given adequate notice of such treatment to the parties. We need not reach this issue, however, because study of the record discloses that plaintiff failed to raise this procedural objection to defendant Warwick's motion.

"Under the circumstances, the parties have charted their own, somewhat peculiar, procedural course creating the basis on which their dispute will be resolved *(Cullen v Naples,* 31 NY2d 818, 820; *Stevenson v News Syndicate Co.,* 302 NY 81, 87; *Reilly v Insurance Co. of North Amer.,* 32 AD2d 918)" *(Guibor v Manhattan Eye, Ear & Throat Hosp.,* 56 AD2d 359, 361, affd 46 NY2d 736).

We agree with Special Term's observations that defendant Warwick is not a resident of New York, has offices in Hong Kong, Taiwan and Korea, is not qualified to do business in New York, has never maintained an office, mailing address, telephone listing or business facility in this State, has not advertised or paid taxes in New York, owns no real property in New York and engages in business in the Far East. However, these observations do not justify on this record Special Term's conclusion that defendant Warwick's only contact with New York is the maintenance of the attached bank account. Parenthetically, we note that it is conceded that the funds which were in the account at the time of the attachment and therefore form the basis of the attachment are not related to the subject matter of this suit.

At the outset it is recognized that quasi in rem jurisdiction (CPLR 314) is involved and that plaintiff has apparently

chosen to forego any attempt at personal jurisdiction under the "long arm" statute (CPLR 302).[2] Defendant Warwick's argument, that aside from the attached $74,000 in its New York bank account, plaintiff has alleged no other basis for jurisdiction is patently meritless. The allegations of the complaint regarding defendant Warwick aver to the breach of an agency agreement and the perpetration of a fraud by Warwick without the State in the issuing of a fraudulent inspection certificate, both under circumstances where Warwick expected or should reasonably expect its act(s) to have consequences in New York. Indeed, the nature of the underlying transaction involving the letter of credit and the necessity for employment of Warwick as plaintiff's agent coupled with clear recognition by Warwick that payment for its services by plaintiff was to be made to "French American Banking Corp., 120 Broadway, New York, NY. 1005, USA for a/c Warwick & Co., Ltd. 100-1367" implicitly, if not explicitly, demonstrates a firm nexus between this jurisdiction and Warwick's activities which are the subject of the suit herein. Warwick concedes and Special Term found that it has offices in diverse foreign locales, to wit, Kowloon, Hong Kong; Taipei, Taiwan; and Seoul, Korea. Warwick further concedes that it is engaged in international commerce, to wit, the business of buying and exporting. It is readily apparent from this and other circumstances in the record, that defendant Warwick derives substantial revenue from such commerce. Further, the inspection by Warwick of the goods manufactured in Korea and shipped to New York was part of the process of the importation of goods into this State. This State has a demonstrable concern about the quality of goods imported into it.

In *Shaffer v Heitner* (433 US 186), the United States Supreme Court held that all assertions of a State's jurisdiction over a nonresident, personal as well as in rem and quasi in rem jurisdiction, must be evaluated according to the minimum contacts standard enunciated in *International Shoe Co. v Washington* (326 US 310). Under that standard, due process "requires * * * that in order to subject a defendant to a judgment * * * if he be not present within the territory of the forum, he have certain minimum contacts with it, such that the maintenance of the suit does not offend 'traditional no-

---

2. In paragraph 2 of the complaint it is alleged that defendant Warwick, a Korean corporation, is "subject to the jurisdiction of this Court to the extent of the assets of said [defendant] which may be located within the jurisdiction."

tions of fair play and substantial justice'" *(International Shoe Co. v Washington,* 326 US, at p 316).

▪ Although rem jurisdiction is relied upon only when personam jurisdiction over a defendant is unavailable, there is no rule of law, logic or common sense proscribing resort to such jurisdiction even though personam jurisdiction might be available. As already noted, we are confronted here with quasi in rem jurisdiction in that plaintiff is seeking a money judgment against defendant Warwick and is not seeking to affect Warwick's interest in any particular property. Thus, by resort to attachment in this ordinary money action, plaintiff has seized property which Warwick has in this State—the bank accounts—thus assuring plaintiff that any money judgment he may get in this action will be enforceable at least to the extent of the seized property. In rem jurisdiction, as compared with quasi in rem jurisdiction, involves an action in which a plaintiff is after a particular thing, rather than seeking a general money judgment, that is, he wants possession of the particular item of property, or to establish his ownership or other interest in it, or to exclude the defendant from an interest in it. Quasi in rem, however, involves a situation where all the plaintiff wants is money. In bringing an ordinary money action against defendant, but being unable to obtain personam jurisdiction of the defendant, or operating under the apprehension that such jurisdiction cannot be obtained, the plaintiff may resort to quasi in rem jurisdiction by which, through the use of appropriate judicial process, he actually or constructively seizes *any* property the defendant may have in the State. "In New York the device used for this purpose is called 'attachment' in the ordinary money action" (Siegel, New York Practice, § 101).

Mr. Justice MARSHALL in delivering the opinion of the court in *Shaffer v Heitner* (433 US 186, 209, *supra)* clearly acknowledged that the type of quasi in rem action affected by the new holding is one in which the property which serves "as the basis for state-court jurisdiction is completely unrelated to the plaintiff's cause of action". "[T]he relationship among the defendant, the forum, and the litigation" must be the center of the inquiry (p 204). Inherent in the analysis mandated by *Shaffer* is consideration of the purposeful acts of the nondomicilary giving rise to the presence or lack of a reason to expect to be hailed before the State-court, the forum (pp 215-216).

▪ On this record the relationship between this State, the

defendant Warwick and this litigation has been sufficiently demonstrated to warrant retention of quasi in rem jurisdiction. While the funds in Warwick's two attached bank accounts at French-American Banking Corporation, 120 Broadway, New York, N. Y., have no connection with Warwick's agency contract, it does not necessarily follow that the bank accounts have no connection with the agreement. Indeed, it appears that one of the attached accounts (Account No. 100-1367) is the very account to which plaintiff was instructed by defendant Warwick to remit payment for the inspection services rendered by Warwick pursuant to its agency agreement with plaintiff. Plaintiff at the time of the attachment had not yet paid the amount charged by Warwick for these services ($2,326.50) into the designated account. Thus, although the account bears a relation to the litigation, the funds in the account at the time of the attachment do not. The relationship of the account to the litigation is thus not merely its fortuitous presence in New York, but the fact that it is the account designated by Warwick as the one to which plaintiff was to remit payment for Warwick's performance under the agency agreement. In *Shaffer v Heitner (supra)*, the mere fortuitous presence in the State of stock owned by a nonresident defendant, which stock was sequestered in the State in connection with a shareholder's derivative action, was held not to provide the requisite contact to establish the jurisdiction of the State court. The nonresident defendant and the claim had no relation to the forum State. In our case not only does it appear that the attached account has some relation to the claim, albeit an indirect one, but that in any event there is a clear relationship between the nonresident defendant (Warwick), this State (the forum), and the litigation.

Patently, the circumstances presented by this record are such that it may objectively be concluded that defendant Warwick expected or should reasonably have expected its acts pursuant to the agency agreement to have consequences within this State (cf. *Allen v Auto Specialties Mfg. Co.*, 45 AD2d 331; *Markham v Gray*, 393 F Supp 163). This case is distinct from *Shaffer* wherein the nonresident defendant simply had done nothing which might form a basis for his expecting to be hailed before the State court (Delaware).

Accordingly, the order of the Supreme Court, New York County (KASSAL, J.), entered September 8, 1978, granting defendant Warwick's motion to dismiss the complaint as

against Warwick pursuant to CPLR 3211 (subd [a], pars 8, 9) on the ground of lack of jurisdiction over Warwick, should be reversed, on the law, and the motion denied, with costs and disbursements.

MURPHY, P. J. and BIRNS, J., concur; KUPFERMAN and FEIN, JJ., concur in result only.

Order, Supreme Court, New York County, entered on September 8, 1978, reversed, on the law, and the motion denied. Appellant shall recover of respondent $75 costs and disbursements of this appeal.