**KALISH & RICE, INCORPORATED, Plaintiff,**

v.

**REGENT AIR CORPORATION, Defendant.**

**No. 85 Civ. 3600 (RWS).**

United States District Court, S.D. New York.

Oct. 25, 1985.

174

Galland, Kharasch, Morse & Garfinkle, P.C., Washington, D.C. (Robert H. Morse, of counsel), Callan, Regenstreich & Kosher, Brooklyn, N.Y. (Bruce Regenstreich, of counsel), for plaintiff.

Patrick J. Monaghan, Jr., New York City, for defendant.

## OPINION

SWEET, District Judge.

Plaintiff Kalish & Rice, Inc. ("K & R") has moved for summary judgment against the defendant Regent Air Corporation ("Regent") pursuant to Rule 56, Fed.R. Civ.P. seeking payment of $260,000 for advertising and marketing services allegedly rendered by K & R. For the reasons stated below, which constitute the findings of fact and conclusions of law, K & R's motion for summary judgment will be granted.

### Facts

Summary judgment may be granted only where there are no genuine issues of material fact. *Rodrigues v. Village of Larchmont, New York*, 608 F.Supp. 467, 471 (D.C.N.Y.1985). The undisputed facts set forth by both K & R and Regent are as follows. K & R, a Pennsylvania corporation, is an advertising and marketing firm with its principal place of business at 1845 Walnut Street, Philadelphia, Pennsylvania. The defendant, Regent, a Delaware corporation, is an airline which operates scheduled passenger service between Los Angeles, California and Newark, New Jersey. It maintains offices at 4 West 58th Street, New York, New York, as well as in Los Angeles, California.

In March of 1984, K & R entered into an oral agreement to provide advertising and marketing services for Regent. For the first six months of this business relationship, K & R billed Regent at its standard hourly rates, and Regent paid K & R on a weekly basis for all work performed on its behalf. In August 1984, K & R agreed to perform these services on a credit basis, and one month later the parties amended their agreement to create a procedure which required K & R to submit cost estimates of all work to be performed which a Regent officer or other authorized employee would then initial signifying approval for the work.

The parties conducted business on this approval and credit procedure from September through December of 1984, until

Regent's account with K & R accumulated unpaid bills for services totalling $242,940. Although invoices were sent throughout these months, most were unpaid, and in January of 1985, Allan Kalish ("Kalish"), president of K & R, initiated discussions with J. Roger Faherty ("Faherty"), chairman of the board of Regent, in order to come to an agreement about settlement of the account. Despite the fact that no agreement had been reached as to the resolution of the debt, on February 6, 1985 Kalish received an unsecured promissory note in the mail from Regent signed by Faherty. Along with the note for $260,000 payable on March 6, 1985, Kalish also received a check in the amount of $2,889.97. Although the check was accepted in partial payment of the amount owed, K & R discussed the promissory note with its parent company, The Earle Palmer Brown Companies, and rejected the offer of this obligation to satisfy the outstanding debt. Kalish rejected the note first orally in March, and then by letter to Faherty on April 9, 1985, with a detailed explanation of why the note was unacceptable. The note had thus been in K & R's possession from February 6, 1985 to April 9, 1985, a total of 63 days.

## Discussion

There is no dispute as to the facts briefly outlined above and no dispute as to the existence of this $260,000 debt which Regent owes K & R. The single issue posed by Regent is whether or not K & R's 63 day retention of the note was acceptance of the obligation in satisfaction of Regent's debt. According to K & R, as a matter of law there was never any acceptance of the

promissory note.[1] According to Regent, the retention of the promissory note for 63 days constituted an acceptance of the instrument in satisfaction of the debt and the Uniform Commercial Code Section 3–802 suspended the underlying obligation and any right to bring a claim based upon that debt until the instrument is due.

The question of whether retention of the note was acceptance turns on the common law of offer and acceptance and not to Article 3 of the Uniform Commercial Code.[2] While the promissory note in question does fall into the category of negotiable instruments governed by Article 3,[3] Regent's citation of Section 3–802(1)(b) bypasses the issue of whether the note was ever accepted by K & R. Section 3–802(1)(b) provides as follows:

(1) Unless otherwise agreed where an instrument is taken for an underlying obligation

\*      \*      \*      \*      \*      \*

(b) in any other case the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation; discharge of the underlying obligor on the instrument also discharges him on the obligation.

This section suspends collection or action on the debt only "where the instrument is taken" for the underlying obligation, leading the inquiry back to the question of whether K & R ever took the obligation in satisfaction of the money owed. On this

---

1. To support this conclusion, K & R cites *Josephine & Anthony Corp. v. Horwitz*, 58 A.D.2d 643, 396 N.Y.S.2d 53 (2d Dept.1977), a case which discusses New York contract law. This case is, however, rendered irrelevant by the court's resolution of the choice of law questions presented.

2. Citations to the Uniform Commercial Code reflect uniform provisions in effect in Delaware, New York and Pennsylvania unless otherwise noted.

3. Section 3–104 in relevant part defines negotiable instruments as follows:

(1) Any writing to be a negotiable instrument within this Article must
   (a) be signed by the maker or drawer; and
   (b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article; and
   (c) be payable on demand or at a definite time; and
   (d) be payable to order or to bearer.
(2) A writing which complies with the requirements of this section is
   (d) a "note" if it is a promise other than a certificate of deposit.

question, Article 3 of the Code provides no guidance because it contains no provisions on the mode of acceptance, and in such cases common law contract doctrines govern.[4]

■ Because federal jurisdiction in this case is based on diversity of citizenship, we apply the forum state's substantive law, including the conflict of laws principles is applicable. *Klaxon v. Stentor Electric Manufacturing Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). New York has adopted a "center of gravity" or "grouping of contacts" approach for choice of law questions in contract actions in which elements of the claim have occurred in jurisdictions outside the state. *Fleet Messenger Service, Inc. v. Life Insurance Company of North America,* 315 F.2d 593 (2d Cir.1963). Under this approach, the court must determine which jurisdiction has the most significant relationship to the matter in dispute, or which has the greatest interest in the transaction. *Index Fund Inc. v. Insurance Company of North America,* 580 F.2d 1158, 1162 (2d Cir.1978).

Courts applying the significant contacts approach have considered a myriad of factors, including the place from which the offer and acceptance were made, and the state with the greatest interest in the outcome of the litigation. *Bache & Co., Inc., v. International Controls Corporation,* 339 F.Supp. 341, 348 (S.D.N.Y.1972). Under this New York conflict of laws analysis, Pennsylvania law governs the determination of whether K & R accepted Regent's promissory note. Although Regent's offer of the promissory note emanated from Los Angeles, delivery of the note was made to K & R's Philadelphia offices, and the last act necessary to accept or reject the offer occurred in Philadelphia. In addition, Pennsylvania seems to have the greatest interest in the outcome of the litigation

because all of the services pursuant to the contract were performed there, and the State has an interest in applying its laws to a controversy concerning a debt owed to one of its corporate citizens. Therefore, Pennsylvania law decisions will determine the significance of K & R's retention of the promissory note.

■ In Pennsylvania the general contract law principle applies that an offeree need not respond to an offer and that silence is not tantamount to an acceptance. *Acme Markets, Inc. v. International Association of Machinists and Aerospace Workers, Local Lodge No. 724,* 506 F.Supp. 92 (E.D.Pa.1980). An acceptance must be unequivocal to be valid. *Mellon Bank, N.A. v. Aetna Business Credit, Inc.,* 619 F.2d 1001 (3d Cir.1980), unless there are special circumstances to indicate that silence should be construed as acceptance, such as where the offeree had a duty to respond, and the offeror was justified in expecting a reply. *Acme Markets, Inc. v. International Association of Machinists and Aerospace Workers, Local Lodge No. 724, supra,* 506 F.Supp. at 99.

There are no such special circumstances present to make K & R's silence into acceptance of the note. The parties had conducted their business dealings on a cash basis until five months prior to the accrual of the underlying debt. The facts demonstrate that Kalish sought to resolve the problem of Regent's open balances in his communications with Faherty and never induced Faherty to believe that the offer of an unsecured $260,000 promissory note would be acceptable to K & R or its parent company. In addition, this silence was of limited duration, because Kalish did reject the offered note, first in a conversation with Regent and then in the detailed letter to Faherty of April 9, 1985 spelling out K

---

**4.** Section 1–103 demonstrates that the common law acts as a backdrop for specific Code provisions and remains in force unless displaced:
Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

& R's objections to the note as a form of payment.

Regent's note was thus never accepted as payment of the debt which it concededly owes to K & R. Therefore, the Uniform Commercial Code section 3–802 suspending the underlying obligation is inapplicable because no note was "taken" by K & R in satisfaction of the debt. K & R is entitled to summary judgment as a matter of law on its contract claim.

Submit judgment on notice.

IT IS SO ORDERED.