**APC COMMODITY CORPORATION d/b/a Sunrise Commodity, Plaintiff,**

v.

**RAM DIS TICARET A.S., Defendant.**

**No. 96 Civil 9162 (JGK).**

United States District Court, S.D. New York.

May 19, 1997.

Peter J. Pizzi, Connell, Foley & Geiser, Roseland, NJ, for Plaintiff.

John Reichman, Gold & Wachtel, New York City, for Defendant.

KOELTL, District Judge:

This is an action for damages arising out of a contract under which the defendant, Ram Dis Ticaret A.S., agreed to ship containers of dried apricots from Turkey to the plaintiff, APC Commodity Corporation d/b/a Sunrise Commodity, in the United States. The plaintiff alleges that the defendant breached and repudiated its contract with the plaintiff by refusing to ship certain containers called for by the contract.

The plaintiff initially filed its complaint in the New York State Supreme Court, New York County. On November 6, 1996, the plaintiff sought and obtained from the New York State court an *ex parte* order of attachment. This order of attachment was levied on $104,306.81 held by the plaintiff's New York bank as amounts receivable for the defendant. On December 5, 1996, the defendant removed this action to this Court. Thereafter the plaintiff filed a complaint in this Court. The defendant now moves to dismiss the complaint for lack of personal jurisdiction and to vacate the state court's order of attachment. The plaintiff cross-moves to confirm the order of attachment.

### I.

The plaintiff is a Delaware corporation with its principal place of business in Englewood Cliffs, New Jersey. (Compl. I 1.) The plaintiff is in the business of importing food products for sale and distribution in the United States. The defendant is a corporation with its principal place of business in Istanbul, Turkey. (Compl.¶ 2.) The defendant is in the business of selling and shipping food products from Istanbul and other ports of origin to the United States. The defendant does not have an office in the State of New York. (Erol Certification ¶ 5.)

The plaintiff alleges that beginning in May 1996, the defendant agreed to sell and the plaintiff agreed to buy a total of twenty-three container loads of dried apricots to be shipped from Istanbul, Turkey, to the Port of New York and New Jersey. (Compl.¶ 3.) On May 23, 1996, the plaintiff sent to the defendant a facsimile confirming the transaction and the plaintiff's agreement to buy sixteen containers from the defendant as agents for Sunsweet, and ten containers for itself. (Compl. ¶ 4 & Ex. B; Dicker Aff. ¶ 9 & Ex. A.) On May 24, 1996, the defendant sent to the plaintiff a facsimile clarifying some of the terms of the transaction. (Compl. ¶ 4 & Ex. C; Dicker Aff. ¶ 10 & Ex. B.)

The plaintiff alleges that on or about October 16, 1996, the defendant shipped two containers of dried apricots to the plaintiff from Istanbul. (Dicker Supplemental Aff. ¶ 9.) Al-

though all the correspondence referred to New York as the port of discharge, (Dicker Aff. Ex. A; Dicker Supplemental Aff. Ex. L–O), the containers were shipped to Port Elizabeth, New Jersey. (Erol Certification ¶ 9.) On October 24, 1996, the defendant's bank in Istanbul, The Chase Manhattan Bank, N.A. ("ChaseIstanbul"), sent to the plaintiff's New York bank, Rabobank Nederland ("Rabobank"), the defendant's invoices, bills of lading, certificates of origin, and phytosanitary certificates for the two containers. (Dicker Supplemental Aff. ¶ 10 & Exs. P, Q.) In exchange for the documents, Chase–Istanbul instructed Rabobank to draw the invoice amount from the plaintiff's Rabobank account and to transfer it to an account at Chase Manhattan Bank in New York ("Chase–New York").

The plaintiff alleges that the defendant shipped only two of the ten containers intended for the plaintiff and three of the remaining thirteen containers. (Compl.¶ 7.) The plaintiff alleges that as a result of the defendant's failure to ship the remaining containers, the plaintiff has been forced to purchase replacement merchandise in order to meet its supply obligations to its customers and has incurred damages of about $348,000. (Dicker Supplemental Aff. ¶ 15.) On November 6, 1996, the plaintiff sought and obtained from the New York Supreme Court, New York County, an *ex parte* order of attachment that was levied on $104,306.81 held by Rabobank, which represents amounts receivable by the defendant for two containers shipped by the defendant to the plaintiff.

## II.

■ The defendant moves to dismiss the complaint under Fed.R.Civ.P. 12(b)(2) on the basis that this Court does not have personal jurisdiction over the defendant. A district court has "broad discretion" in deciding how to proceed with a motion to dismiss for lack of personal jurisdiction, including conducting an evidentiary hearing. *See CutCo Indus. v. Naughton,* 806 F.2d 361, 364 (2d Cir.1986); *International Customs Assocs., Inc. v. Ford*

*Motor Co.,* 893 F.Supp. 1251, 1258–59 (S.D.N.Y.1995). Because there has not been an evidentiary hearing in this case, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant, and the pleadings and affidavits are to be interpreted in the light most favorable to the plaintiff. *See A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76, 79–80 (2d Cir.1993); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985); *CT Chem. (USA) Inc. v. Horizons Int'l, Inc.,* 106 F.R.D. 518, 519 (S.D.N.Y.1985).

■ A court sitting in diversity applies the law of the forum state in determining whether it has personal jurisdiction over a defendant. *See CutCo,* 806 F.2d at 365; *Hoffritz,* 763 F.2d at 57; *International Customs Assocs.,* 893 F.Supp. at 1259. The plaintiff argues that this Court has personal jurisdiction pursuant to the New York long-arm statute. *See* N.Y. C.P.L.R. § 302(a)(1).[1] N.Y. C.P.L.R. § 302(a)(1) provides in relevant part:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent ... transacts any business within the state or contracts anywhere to supply goods or services in the state....

N.Y. C.P.L.R. § 302(a)(1). Under this provision, "the existence of some articulable nexus between the business transacted and the cause of action sued upon" is essential. *McGowan v. Smith,* 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321 (1981); *see also CutCo,* 806 F.2d at 365.

■ Under the first prong of § 302(a)(1) jurisdiction, transacting business "has been interpreted to require a certain quality, rather than a specific quantity, of contacts with New York." *Broad Horizons, Inc. v. Central Crude Ltd.,* No. 94 Civ. 1593, 1994 WL 623075, at *2 (S.D.N.Y. Nov. 9, 1994) (citation omitted); *see also International Customs Assocs.,* 893 F.Supp. at 1259; *Cavalier Label*

---

1. The plaintiff does not argue that the Court has "general jurisdiction" over the defendant under N.Y. C.P.L.R. § 301.

*Co., Inc. v. Polytam, Ltd.,* 687 F.Supp. 872, 876 (S.D.N.Y.1988). "A nondomiciliary transacts business under CPLR § 302(a)(1) when he purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." *CutCo,* 806 F.2d at 365 (internal quotations and citations omitted). "Whether or not the contacts are of the appropriate nature must be determined by an analysis of the totality of the circumstances." *United States Theatre Corp. v. Gunwyn/Lansburgh Ltd. Partnership,* 825 F.Supp. 594, 596 (S.D.N.Y.1993) (citations omitted)

■ Under the second prong of § 302(a)(1) jurisdiction, "New York courts may exercise jurisdiction over a nondomiciliary who contracts outside this State to supply goods or services in New York so long as the cause of action arose out of that contract." *Anderson Dev. Corp. v. Isoreg Corp.,* 154 A.D.2d 859, 860, 546 N.Y.S.2d 720, 721 (3d Dep't 1989); *see also Cavalier,* 687 F.Supp. at 877. Jurisdiction may exist even when the goods are never shipped or supplied to New York. *See Laumann Mfg. Corp. v. Castings USA, Inc.,* 913 F.Supp. 712, 716 (E.D.N.Y.1996); *En Vogue v. UK Optical Ltd.,* 843 F.Supp. 838, 843 (E.D.N.Y.1994); *Alan Lupton Assocs., Inc. v. Northeast Plastics, Inc.,* 105 A.D.2d 3, 6, 482 N.Y.S.2d 647, 650 (4th Dep't 1984). "The key issue is that the nondomiciliary contracted and intended to send goods to New York." *Laumann,* 913 F.Supp. at 717.

■ In this case, the plaintiff has made a prima facie showing that this Court has personal jurisdiction over the defendant under both prongs of N.Y. C.P.L.R. § 302(a)(1). First, the defendant transacted business in New York, and the plaintiff's claim against the defendant arises out of that business activity. *See CutCo,* 806 F.2d at 365; *International Customs Assocs.,* 893 F.Supp. at 1259. The plaintiff alleges that its president met with the defendant's General Manager, Metin Gurbilek, three times between December 1995 and July 1996 and discussed the specifics of the pending transactions. (Dicker Supplemental Aff. ¶¶ 4–5.) Consistent with the usual course of dealing between the

defendant and the plaintiff, the defendant caused Chase–Istanbul to send by international *courier* to Rabobank in New York documents of title and certificates of origin and sanitation for the two containers. (Dicker Aff. ¶ 4; Dicker Supplemental Aff. ¶¶ 6, 10–11 & Exs. P, Q.) Based upon the physical delivery of these documents of title to New York, Chase–Istanbul instructed Rabobank to wire to an account at Chase–New York the money owed for the merchandise. The defendant purposefully availed itself of the privilege of conducting activities in New York that were critical to the transactions at issue in this case. These activities are sufficient for personal jurisdiction.

Second, the plaintiff has demonstrated that its claim arises out of a contract to supply goods to New York. The plaintiff's May 23, 1996 facsimile to the defendant that confirmed the parties' agreement provided for "C & F NY," (Dicker Aff. Ex. A), the defendant's invoices sent to Rabobank provided for "CFR / New York," (Dicker Supplemental Aff. Exs. L, M), and the defendant's bills of lading sent to Rabobank provided for New York as the port of discharge, (Dicker Supplemental Aff. Ex. N, 0). "That purposeful activity directed at New York is sufficient to confer personal jurisdiction pursuant to the statute" despite the fact that the two containers of apricots were ultimately shipped to Port Elizabeth, New Jersey. *En Vogue,* 843 F.Supp. at 844.

■ The plaintiff also asserts that quasi-in-rem jurisdiction exists because the $104,306.81 held by Rabobank directly relates to the transaction in question. "Whether quasiin-rem jurisdiction exists in a given case involves an inquiry into the presence or absence of the constitutionally mandated minimum contacts." *Banco Ambrosiano, S.P.A. v. Artoc Bank & Trust Ltd.,* 62 N.Y.2d 65, 72, 476 N.Y.S.2d 64, 67, 464 N.E.2d 432 (1984). "Under that standard, due process 'requires … that in order to subject a defendant to a judgment …, if he be not present within the territory of the forum, he have certain minimum contacts with it, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Majique Fashions, Ltd. v.*

*Warwick & Co. Ltd.,* 67 A.D.2d 321, 325–26, 414 N.Y.S.2d 916, 920 (1st Dep't 1979) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)); *see also Shaffer v. Heitner,* 433 U.S. 186, 212, 97 S.Ct. 2569, 2584, 53 L.Ed.2d 683 (1977). "Inherent in the analysis ... is consideration of the purposeful acts of the non-domiciliary giving rise to the presence or lack of a reason to expect to be haled before the state-court, the forum." *Majique,* 67 A.D.2d at 326, 414 N.Y.S.2d at 920 (citation omitted). Quasi-in-rem jurisdiction thus does not exist "when the property serving as the jurisdictional basis has no relationship to the cause of action and there are no other ties among the defendant, the forum and the litigation...." *Banco Ambrosiano,* 62 N.Y.2d at 71, 476 N.Y.S.2d at 67, 464 N.E.2d 432; *see also Johnson v. United Overseas Bank,* No. 95 Civ. 9508, 1997 WL 79871, at *2 (S.D.N.Y. Feb.25, 1997).

The defendant argues that the due process requirements and minimum contacts necessary for quasi–in–rem jurisdiction have not been met because the presence of the $104,306.81 in New York was fortuitous and was the result of the plaintiff's rather than the defendant's actions. *See Nemetsky v. Banque de Developpement de la Republique du Niger,* 64 A.D.2d 694, 695, 407 N.Y.S.2d 556, 557–58 (2d Dep't 1978), *aff'd,* 48 N.Y.2d 962, 425 N.Y.S.2d 277, 401 N.E.2d 388 (1979). However, the plaintiff has demonstrated that the funds in question are not in New York fortuitously. They are in New York pursuant to a contract between the parties that called for a series of exchanges in New York, which give rise to the presence of a reason for the defendant to expect to be haled into court in New York. As explained above, pursuant to an agreement between the parties, the defendant caused certain documents pertaining to two of the ten containers to be delivered to Rabobank in New York with instructions that the invoice amount be transferred to an account at Chase–New York. The attached funds held by Rabobank represent a portion of the proceeds of the contract at issue in this litigation. These contacts satisfy the minimum contacts standard, and the dictates of due process are not offended by requiring the defendant to defend this claim in New York. See *Banco Ambrosiano,* 62 N.Y.2d at 73, 476 N.Y.S.2d at 68, 464 N.E.2d 432; *Majique,* 67 A.D.2d at 326–27, 414 N.Y.S.2d at 920–21.

Accordingly, because this Court has personal jurisdiction over the defendant and because quasi-in-rem jurisdiction exists, the defendant's motion to dismiss the complaint for lack of personal jurisdiction is denied.

### III.

The defendant moves to vacate the state court's order of attachment, and the plaintiff cross-moves to confirm the order of attachment. Pursuant to Fed.R.Civ.P. 64, orders of attachment are governed by New York law. New York law provides that "[a]n order of attachment may be granted in any action ... when ... 1. the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state...." N.Y. C.P.L.R. § 6201. The plaintiff is required to show "that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." N.Y. C.P.L.R. § 6212(a). "Upon a motion to vacate or modify an order of attachment the plaintiff shall have the burden of establishing the grounds for the attachment, the need for continuing the levy and the probability that he will succeed on the merits." N.Y. C.P.L.R. § 6223(b).

The defendant argues that the attachment should be vacated because the plaintiff has not met its burden of showing probability of success on the merits and establishing the grounds of attachment, including that the amount demanded from the defendant exceeds all counterclaims. The defendant contends that Turkish law applies to this action and that the plaintiff has failed to demonstrate, under Turkish law, the existence of a contract and the plaintiff's right to recover under that contract. The plaintiff asserts that either New York or New Jersey law should apply to this action and that it has

demonstrated that it is entitled to recover under both.

■ In a case where jurisdiction is based on diversity of citizenship, a federal court applies the conflict of law principles of the forum state. See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). In Brink's Ltd. v. South African Airways, 93 F.3d 1022 (2d Cir.1996), cert. denied, —— U.S. ——, 117 S.Ct. 959, 136 L.Ed.2d 845 (1997), the Court of Appeals for the Second Circuit explained the approach used by New York courts:

> In contract cases, New York courts now apply a "center of gravity" or "grouping of contacts" approach. Under this approach, courts may consider a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties. New York courts may also consider public policy "where the policies underlying conflicting laws in a contract dispute are readily identifiable and reflect strong governmental interests." The traditional choice of law factors, the places of contracting and performance, are given the heaviest weight in this analysis.

Id. at 1030–31 (citations omitted); see also Kalish & Rice, Inc. v. Regent Air Corp., 624 F.Supp. 173, 176 (S.D.N.Y.1985).

In this case, New Jersey has the most significant contacts. The contract for the twenty-three containers was confirmed in writing by facsimiles written in and sent from New Jersey. The first two containers were delivered to Port Elizabeth, New Jersey. Furthermore, the plaintiff's principal place of business is in Englewood Cliffs, New Jersey. Under these facts, the plaintiff has demonstrated a likelihood that New Jersey law will be applied.

■ Under New Jersey law, the written confirmation of an oral agreement between merchants establishes an enforceable contract where the recipient does not object within ten days. See N.J. Stat. Ann. § 12A:2–201; see also Trilco Terminal v. Prebilt Corp., 167 N.J.Super. 449, 452, 400 A.2d 1237, 1239 (1979), aff'd, 174 N.J.Super. 24, 415 A.2d 356 (N.J.Super.Ct.App.Div.1980). The plaintiff argues that in May 1996, it reached an oral agreement with the defendant for the purchase and sale of a total of twenty-three containers of apricots. This oral agreement was then confirmed in writing by the plaintiff's May 23, 1996 facsimile, which discussed the price, quantity, and delivery of the containers. The defendant did not object to the terms of the agreement in its May 24, 1996 facsimile; instead, it acknowledged receipt of the plaintiff's May 23, 1996 facsimile and clarified certain terms in that communication. Accordingly, the plaintiff has established the likely existence of an enforceable contract under New Jersey law.[2]

The defendant also argues that it was justified in refusing to ship further containers to the plaintiff because the plaintiff owed it more than $50,000 with respect to three other shipments of goods. (Erol Certification ¶ 16 & Ex. C.) The plaintiff contends that it only owes the defendant approximately $28,161 for those shipments. In any event, the amount of the plaintiff's alleged damages—in excess of $340,000—far exceeds the attached funds held by Rabobank and any counterclaim asserted by the defendant.

■ Accordingly, because the plaintiff has demonstrated the probability that it will succeed on the merits, the defendant's motion to vacate the state court's order of attachment is denied, and the plaintiff's cross-motion to confirm the order of attachment is granted.[3]

2. The defendant argues that it was justified in failing to ship any further products to the plaintiff because the plaintiff failed to comply with the terms of the purported contract. The defendant alleges that the plaintiff never provided notice six weeks prior to shipment of which size apricots it wanted. However, three facsimiles sent in July 1996 demonstrate that the plaintiff provided notice of size. (Dicker Aff. Exs. D–F.)

3. Because the order of attachment is confirmed, the defendant's current application for attorneys fees pursuant to N.Y. C.P.L.R. § 6212(e) is denied.

## CONCLUSION

For the reasons explained above, the defendant's motion to dismiss the complaint and to vacate the state court's order of attachment is **denied.** The plaintiff's cross-motion to confirm the order of attachment is **granted.**

**SO ORDERED.**