OPINION OF THE COURT
Wachtler, J.
Plaintiff commenced this action by the attachment of approximately $8 million, representing the balance of defendant’s account with its New York correspondent bank. Defendant’s appeal, taken pursuant to leave granted by the Appellate Division, focuses primarily on the question of whether this attempted assertion of quasi-in-rem jurisdiction over defendant’s property is consistent with due *69 process. We agree with the lower courts that the contacts among defendant, the forum and the litigation are sufficient to render this limited exercise of jurisdiction inoffensive to principles of due process.
Plaintiff Banco Ambrosiano (Ambrosiano) is an Italian banking corporation, the principal office of which is in Milan. Prior to being placed in liquidation, Ambrosiano was involved in the international banking business and, in this connection, maintained a representative office in New York City. Defendant Artoc Bank and Trust Limited (Ar-toc), also a banking corporation, is organized under the laws of Nassau, Bahamas, and regularly engages in international transactions. Many of these transactions involve the borrowing and lending of United States dollars, which requires that the transfers be handled through a United States bank. For this purpose, Artoc utilizes an account with its New York correspondent bank, Brown Brothers Harriman and Co. (Brown Brothers). Neither Ambrosiano nor Artoc is authorized to engage in the banking business in this State.
Ambrosiano brought this action to recover $15 million which it allegedly loaned to Artoc, and which has not been repaid. Three transactions, each involving $5 million, were entered into by the parties. The memoranda drawn by Artoc indicate that Ambrosiano was to deposit these sums in Artoc’s account with Brown Brothers, and that repayment was to be made to Ambrosiano’s account with its New York correspondent bank. Artoc contends, in its defense, that the purpose of the transaction was to reloan the funds to Ambrosiano’s controlled subsidiary in Peru and that it was understood that Artoc was to repay these sums only if and when the ultimate recipient repaid them.
With respect to the jurisdictional issue, it appears that all negotiations concerning this agreement were made outside of New York and all communications took place among the Bahamas, Italy, and Peru. The only connection with New York is that the funds were deposited to a New York bank account, were to be repaid to another New York bank account, and apparently were transferred to a New York account on behalf of the ultimate recipient. Artoc argues that the sole reason New York banks were utilized *70 is that the transaction was to be in United States dollars and therefore had to be handled through such clearing accounts. In any event, it is clear that Artoc’s sole contact with this State was its maintenance of the correspondent bank account with Brown Brothers.
Ambrosiano commenced this action by obtaining an ex parte restraining order, enjoining Brown Brothers from transferring the funds in Artoc’s account. Ambrosiano’s motion to confirm the attachment was granted over Artoc’s challenge to the exercise of jurisdiction over its property. Special Term, noting that Ambrosiano conceded the lack of in personam jurisdiction, found that the property bore a reasonable relationship to the cause of action and that this relationship was sufficient to form the basis for quasi-in-rem jurisdiction. The Appellate Division unanimously affirmed.
Prior to the Supreme Court’s expansion of the recognized bases for extraterritorial jurisdiction over a nondomicili-ary, those who wished to sue in this State often resorted to the doctrine of quasi-in-rem jurisdiction to force a nondom-iciliary defendant to litigate a claim in a forum where the defendant happened to own property. The conceptual basis for the State’s power to adjudicate the claim was defendant’s property, which was brought before the court by virtue of its seizure or attachment. Any resulting judgment was viewed as a judgment against the property only.
With the holding in International Shoe Co. v Washington (326 US 310), the approach to jurisdictional analysis was greatly altered. While jurisdictional power had been a function of the defendant’s presence, actual or constructive, in the forum State, International Shoe shifts the focus of the inquiry to the nature and quality of the defendant’s contacts with the State. Those contacts must be such as to “make it reasonable and just, according to our traditional conception of fair play and substantial justice” to require the defendant to litigate the claim in the particular forum (id., at p 320). Where the cause of action arises out of the defendant’s activities in or contacts with the State, the extraterritorial exercise of jurisdiction is deemed reasonable.
*71 The long-arm jurisdiction legitimized by the International Shoe court was implemented in this State by statute. When the CPLR took effect in 1963, it contained two relevant sections. CPLR 301 preserves all previously existing jurisdictional bases, providing that the courts “may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore”. The long-arm statute, CPLR 302, provides that when a cause of action arises out of certain activities either occurring within the State or having an impact within the State, jurisdiction may be exercised over a nondomiciliary. Importantly, in setting forth certain categories of bases for long-arm jurisdiction, CPLR 302 does not go as far as is constitutionally permissible. Thus, a situation can occur in which the necessary contacts to satisfy due process are present, but in personam jurisdiction will not be obtained in this State because the statute does not authorize it (Siegel, NY Prac, § 84, p 95; Note, Minimum Contacts and Jurisdictional Theory in New York: The Effect of Shaffer v. Heitner, 42 Alb L Rev 294, 306).
Even with the adoption of the long-arm statute, quasi-in-rem jurisdiction, which had been carried forward by virtue of CPLR 301, remained a viable method for subjecting a nondomiciliary to suit in this State. The use of this doctrine was drastically limited, however, by the Supreme Court’s decision in Shaffer v Heitner (433 US 186). There, the court held that the minimum contacts analysis set forth in International Shoe is applicable to actions involving quasi-in-rem as well as in personam jurisdiction (id., at p 207). Thus, when the property serving as the jurisdictional basis has no relationship to the cause of action and there are no other ties among the defendant, the forum and the litigation, quasi-in-rem jurisdiction will be lacking (id., at pp 208-209).
Although it may appear, at first blush, that the usefulness of quasi-in-rem jurisdiction has been eliminated by Shaffer, inasmuch as the minimum contacts necessary to support it will also generally provide in personam jurisdiction, that is not the case, at least in New York. As noted above CPLR 302 does not provide for in personam jurisdiction in every case in which due process would permit it. *72 Thus, a “gap” exists in which the necessary minimum contacts, including the presence of defendant’s property within the State, are present, but personal jurisdiction is not authorized by CPLR 302. It is appropriate, in such a case, to fill that gap utilizing quasi-in-rem principles (Siegel, NY Prac, § 104, p 124; Note, Minimum Contacts and Jurisdictional Theory in New York: The Effect of Shaffer v. Heitner, 42 Alb L Rev 294, 306).
Whether quasi-in-rem jurisdiction exists in a given case involves an inquiry into the presence or absence of the constitutionally mandated minimum contacts (Intermeat, Inc. v American Poultry, 575 F2d 1017 [2d Cir]; Drexel Burnham Lambert v D'Angelo, 453 F Supp 1294 [SDNY]; Unitech USA v Ponsoldt, 91 AD2d 903; Majique Fashions v Warwick & Co., 67 AD2d 321; see Porcello v Brackett, 85 AD2d 917, 918, affd 57 NY2d 962). Given this limited inquiry, cases in which we have determined that a given set of facts is insufficient for the exercise of personal jurisdiction, will not necessarily be dispositive (see Nemetsky v Banque De Developpement De La Republique Du Niger, 48 NY2d 962, affg 65 AD2d 748; Amigo Foods Corp. v Marine Midland Bank, 39 NY2d 391, after remittitur 46 NY2d 855, affg 61 AD2d 896; Faravelli v Bankers Trust Co., 59 NY2d 615, affg 85 AD2d 335).
Turning to the facts of the present case, we hold that the relationship between the defendant Artoc, the litigation and this State is sufficient to make it fair that Artoc be compelled to defend here. Artoc stresses that its only contact with New York is the maintenance of its correspondent bank account and urges that the mere presence of this property is insufficient to sustain jurisdiction. What Artoc appears to overlook is the quality of this contact and its significance in the context of this litigation. This is not a case in which property is coincidentally located within the State’s borders and forms the only relevant link to defendant; rather, Artoc’s account with Brown Brothers is closely related to plaintiff’s claim. It is the very account through which Artoc effectuated the transaction at issue, directing Ambrosiano to pay funds to the account and presumably directing Brown Brothers to transfer the funds out of this account to their ultimate recipient. Nor is this *73 transaction an isolated one, for it appears that Artoc utilizes this account regularly to accomplish its international banking business, communicating with Brown Brothers for disbursements of funds on its behalf and directing others to deposit funds there. Finally, with respect to performance of the agreement which forms the basis for Ambrosiano’s claim, Artoc not only directed that the funds be deposited in its New York account, but it also agreed to repay these amounts (according to Artoc, only if Ambrosia-no’s Peruvian subsidiary repaid them) to Ambrosiano’s New York account. These factors — the relationship between the cause of action and the property, the activities to be performed in New York under the parties’ agreement, and Artoc’s other ties with New York — combine to render the exercise of quasi-in-rem jurisdiction appropriate in this case. The dictates of due process are not offended by requiring Artoc to defend this claim in New York, as it has maintained a significant connection with the State and undertaken purposeful activity here (see Sterling Nat. Bank & Trust Co. v Fidelity Mtge. Investors, 510 F2d 870 [2d Cir] [finding personal jurisdiction on somewhat similar facts]; Federal Deposit Ins. Corp. v Interbanca-Banca Per Finanziamenti a Medio Termine, 405 F Supp 1118 [SDNY] [same]).
Artoc also argues that the courts below erred in refusing to dismiss this action on the ground of forum non conveniens. Although a New York court may have jurisdiction over a claim, it is not, of course, compelled to retain jurisdiction if the claim has no substantial nexus with New York (Silver v Great Amer. Ins. Co., 29 NY2d 356, 361; Martin v Mieth, 35 NY2d 414, 418). The question whether jurisdiction should be retained in a given case involves a balancing of several factors, including the difficulties for defendant in litigating the claim in this State, the burden on the New York courts in entertaining the suit and the availability of another more convenient forum in which plaintiff may obtain redress (Varkonyi v Varig, 22 NY2d 333; Irrigation & Ind. Dev. Corp. v Indag S.A., 37 NY2d 522). Once the lower courts have considered all relevant factors, however, this court will not disturb their determination, unless it appears that they have abused their discretion as a matter of law.
*74 No such abuse of discretion occurred in this case. Artoc had the heavy burden of demonstrating that the forum chosen by Ambrosiano is an inappropriate one (Bata v Bata, 304 NY 51). Although Artoc has identified some indications that New York may be an inconvenient forum, the circumstances are not so compelling as to warrant rejecting Ambrosiano’s choice of forum. Broad allegations that issues of Bahamian law will arise or that witnesses and documents are located outside New York are not sufficient for this purpose, at least in the absence of more specific information. Artoc simply did not establish, to the satisfaction of the lower courts, that there is another forum “which will best serve the ends of justice and the convenience of the parties” (Silver v Great Amer. Ins. Co., 29 NY2d 356, 361, supra), and there is no basis for disturbing the determination that jurisdiction should be retained.
Finally, Artoc’s argument that as a foreign banking corporation Ambrosiano may not maintain this action must be rejected. Pursuant to section 200-b (subd 2, par [a]) of the Banking Law, an action against a foreign banking corporation may be maintained by another foreign banking corporation “where the action is brought to recover damages for the breach of a contract made or to be performed within this state”. Given that the contract which is the basis of Ambrosiano’s claim calls for several activities to be performed in this State, the action is properly brought under the statute.
We have considered the remaining points argued by Artoc and find them to be without merit.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Cooke and Judges Jasen, Jones, Meyer and Simons concur; Judge Kaye taking no part.
Order affirmed, with costs. Question certified answered in the affirmative.