**THE TOPPS COMPANY, INC., Plaintiff,**

v.

**GERRIT J. VERBURG CO. and B.I.P. Holland B.V., Defendants.**

**No. 96 Civ. 7302(RWS).**

United States District Court,
S.D. New York.

April 28, 1997.

Hutton Ingram Yuzek Gainen Carroll & Bertolotti (David G. Ebert, of counsel), New York City, for Plaintiff.

Ostrolenk, Faber, Gerb & Soffen (Robert C. Faber, of counsel), New York City, for Defendants.

## OPINION

SWEET, District Judge.

In this case alleging trademark design and trade dress infringement and related state causes of action, defendant B.I.P. Holland B.V. ("B.I.P.") has made a special appearance seeking dismissal of the action against it pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Upon the findings and conclusions set forth below, the motion is granted.

### Prior Proceedings

This action was commenced by The Topps Company, Inc. ("Topps") on September 25, 1996. The complaint alleges violations of §§ 32 and 43(a) of the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1114, 1125(a), common law unfair competition, and violations of the General Business Law of New York. Topps' motion for a preliminary injunction barring defendants Gerrit J. Verburg Co. ("Verburg") and B.I.P. from infringement of Topps trademark design and trade dress was granted by this Court on December 12, 1996. *The Topps Co. v. Gerrit J. Verburg Co.*, No. 96 Civ. 7302, 41 U.S.P.Q.2d 1412, 1996 WL 719381 (S.D.N.Y. 1996). B.I.P. filed the present motion to dismiss on January 3, 1997. Oral argument was heard on January 29, 1997, at which time the motion was deemed submitted.

### Facts

The facts pertaining to the development and marketing of the competing products in this case (Topps' "Ring Pop" and Verburg's "Diamond Lollipop") were set out in this Court's opinion granting a preliminary injunction and will not be repeated here. *See The Topps Co., supra.* Additional facts relevant to this motion are set forth below.

Topps is a corporation organized under the laws of Delaware, with its principal place of business in New York, New York.

B.I.P. is a corporation organized under the laws of Holland. It manufactures candy in Malaysia for sale to independent distributors throughout the world. B.I.P. does not own or control any company in the United States. It has no offices, mailing addresses, telephone listings, bank accounts or property of any kind in the United States. It has no employees, personnel, contractual agents, or representatives in the United States. B.I.P. maintains that it has never sold, shipped, or contracted to sell or ship any of its products to the United States or the State or City of New York. It further maintains that it has never presented its products at any trade show or display in the United States or New York. Finally, B.I.P. maintains that it has never advertised, promoted, marketed, or solicited any business in the United States or

New York. None of these factual averments are contested by Topps.

B.I.P. sold its Diamond Lollipop product, which is the subject of this litigation, to defendant Verburg outside the United States. The only evidence adduced from the pleadings and affidavits that B.I.P. ever anticipated any sales in the United States by its customers is that the label on the Diamond Lollipop, produced in Malaysia, contains the words "colors for U.S.A." on it.

Verburg is a corporation organized under the laws of Michigan, where it has its principal place of business. Verburg is not presently contesting jurisdiction. Verburg maintains relationships with candy brokers in New York where it has displayed the Diamond Lollipop at trade shows. Verburg bought the Diamond Lollipop units F.O.B. in Malaysia from B.I.P.

Although it is likely that B.I.P. knew it was selling to an American distributor, there is no evidence of any oral or written distribution agreement between B.I.P. and Verburg, nor is there any evidence that B.I.P. and Verburg are in any way affiliated companies. B.I.P. maintains that it exercised no control over the product it sold to Verburg after it was to delivered to Verburg in Malaysia.

### Discussion

■ On a 12(b)(2) motion in a case arising under federal law, where the statute "does not provide for service of process on a party outside the state, the issue of personal jurisdiction must be determined according to the law of the forum state." *Aerogroup International, Inc. v. Marlboro Footworks. Inc.*, 956 F.Supp. 427, 432–33 (S.D.N.Y.1996), citing *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 105–110, 108 S.Ct. 404, 410–13, 98 L.Ed.2d 415 (1987). In New York, personal jurisdiction over non-domiciliaries is conferred by N.Y. CPLR § 302, New York's long-arm statute.

■ If a federal court finds that jurisdiction is conferred by the state long-arm

statute, it must then consider whether the exercise of personal jurisdiction would offend traditional notions of due process. *See German Educational Television Network, Ltd. v. Oregon Public Broadcasting Co.*, 569 F.Supp. 1529, 1532 (S.D.N.Y.1983). The constitutional due process issue is a separate question that is only reached after a finding of statutory jurisdiction. Ordinarily, however, if jurisdiction is proper under the CPLR, due process will be satisfied because CPLR § 302 does not reach as far as the constitution permits. *See Banco Ambrosiano, S.P.A. v. Artoc Bank & Trust*, Ltd., 62 N.Y.2d 65, 67–69, 476 N.Y.S.2d 64, 67, 464 N.E.2d 432, 433 (1984).

■ It is the plaintiff who "bears the burden of showing that the court has jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996). However, where, as here, the parties have not engaged in discovery on the issue of personal jurisdiction, "a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." *Id.*[1] Finally, "the pleadings and affidavits are to be construed in the light most favorable to the plaintiff and all doubts are resolved in its favor." *Alto Products Corp. v. Ratek Industries Limited*, 1996 WL 497027 (S.D.N.Y. 1996), *citing CutCo Indus. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986).

■ Topps asserts that this Court has jurisdiction over B.I.P. under CPLR § 302(a)(2), which provides, in part, that "a court may exercise jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious act within the state . . . ."

■ In a trademark infringement action, for purposes of § 302(a)(2), a tortious act is committed within the state when a party attempts to "pass off" the allegedly infringing goods as their own. No actual sale is required; it is enough that the goods are offered for sale. *See Bensusan Restaurant*

---

1. While it is true that an evidentiary hearing was held for purposes of the preliminary injunction motion against defendant Verburg, the Court finds that the evidence adduced from that hearing does not amount to discovery on the personal jurisdiction issue as it relates to B.I.P. Therefore, Topps will be held to the "legally sufficient allegations" standard. It should be noted that if discovery had been conducted on the jurisdiction issue, Topps would be subject to a higher, "preponderance of the evidence" standard. *Robertson–Ceco*, 84 F.3d at 567.

*Corp. v. King,* 937 F.Supp. 295, 299 (S.D.N.Y. 1996), citing *Vanity Fair Mills, Inc. v. T. Eaton Co.,* 234 F.2d 633, 639 (2d Cir.1956).

Based on the record before the court, B.I.P. did not infringe Topps' product "in person" under CPLR § 302(a)(2), since B.I.P. did not itself "pass off" its Diamond Lollipop in New York. Therefore, if jurisdiction may be asserted over B.I.P., it will only be "through an agent"—in this case, Verburg.

In interpreting Section 302(a)(2), New York courts have customarily interpreted the term "agent" rather broadly. *Grove Press, Inc. v. Angleton,* 649 F.2d 121, 122 (2d Cir. 1981), citing *Galgay v. Bulletin* Co., 504 F.2d 1062, 1065 (2d Cir.1974); *see also, Alto Products,* 1996 WL 497027 at *3 ("[I]n determining whether . . . an agency relationship exists under § 302, courts have focused on the realities of the relationship rather than the formalities of agency law").

Courts in this jurisdiction have sometimes used a theory of "contributory infringement" to exert jurisdiction under § 302(a)(2) over non-domiciliaries who, while not directly passing off infringing goods in the jurisdiction, supplied the infringing goods that were ultimately passed off by another. *See Alto Products, supra; G.H Bass & Co. v. Wakefern Food Corp.,* 21 U.S.P.Q.2d 1862, 1991 WL 285622 (S.D.N.Y.1991); *Levi Strauss & Company v. Textiles Y Confecciones Europeas, S.A.,* 222 U.S.P.Q. 971, 1983 WL 51863 (S.D.N.Y.1983). Under this contributory infringement theory, a non-domiciliary manufacturer or distributor may be subject to personal jurisdiction upon a showing that it sold a product to an importer (such as Verburg), with full knowledge that the product will or can reasonably be expected to be resold in the jurisdiction, where it will infringe the plaintiff's mark. *See Alto Products,* 1996 WL 497027 at *3; *Bass,* 1991 WL 285622 at *4.

The courts exercising jurisdiction under this theory of agency have relied on various factors in concluding that the non-domiciliary defendant knew that the product could reasonably be expected to be resold in the jurisdiction. In *Alto Products,* there was evidence that the overseas manufacturer challenging jurisdiction was owned and controlled by the same New York resident who owned the New York-based distributor that sold the infringing goods in New York. *Alto Products,* 1996 WL 497027 at *3. In *G.H. Bass,* a New Jersey defendant was found to have knowledge of the potential for infringement because it affixed the plaintiff's label to the infringing shoes and sold the shoes to another New Jersey distributor whom the defendant had encountered at trade shows and thus had reason to know that the distributor had sold products to particular retailers in New York. *G.H Bass,* 1991 WL 285622 at *4. Finally, in *Levi Strauss,* the overseas manufacturer had knowledge of the domestic distributor's potential for infringement after visiting the United States to observe the distributor's operations and attend trade conventions. *Levi Strauss,* 222 U.S.P.Q. at 974.

Here, there is no evidence that B.I.P. is affiliated with Verburg, as the manufacturer was affiliated with the distributor in *Alto Products.* No direct allegation has been made that B.I.P. had knowledge of Verburg's operations in New York through a prior course of dealing with the company, as was the case in both *Bass* and *Levi Strauss.*

Although the fact that Verburg was a United States corporation and the fact that the ingredient legend on the packaging for the Diamond Lollipop includes the designation "colors for U.S.A." may support an inference that B.I.P. anticipated sales in the United States, there is no evidence to support the conclusion that B.I.P. knew that sales could be expected in New York. Verburg is a Michigan corporation. Although Verburg admitted to having agents in New York, there is no indication that B.I.P. knew or had reason to know of Verburg's New York distribution contacts.

The cases invoking the contributory infringement theory to establish an agency relationship have involved a closer nexus between the foreign supplier and the New York infringer, giving rise to an inference that the supplier purposefully used an intermediary to take advantage of the market in the forum state, while avoiding jurisdiction for infringe-

ment. *See also Rockwell International Corp. v. Costruzioni Aeronautiche Giovanni Agusta S.p.A.*, 553 F.Supp. 328, 333 (E.D.Pa. 1982) ("[A] manufacturer or major distributor should not be allowed to profit from the sale of its product in a state, while simultaneously insulating itself from liability by establishing an indirect and multi-faceted chain of distribution"). Here, in contrast, the sale from B.I.P. to Verburg is not alleged to be anything more than an arms-length transaction.

Moreover, extending the contributory infringement theory of agency to cover the transaction between B.I.P. and Verburg could raise constitutional concerns. Since the New York courts have held that § 302 does not extend personal jurisdiction to the full limits of the Constitution, a federal court should be reluctant to exercise jurisdiction under the statute in a way that raises significant constitutional doubts by interpreting the term "agent" in an overly broad manner.

Due process requires the plaintiff to demonstrate that the defendant has such "minimum contacts" with the forum state that the exercise of jurisdiction would not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). "The due process test for personal jurisdiction has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Robertson–Ceco*, 84 F.3d at 567.

In *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), a plurality of the Supreme Court held that merely placing a product into the stream of commerce with the awareness that it might ultimately be carried into the forum state is insufficient to establish the minimum contacts required by due process. 480 U.S. at 112, 107 S.Ct. at 1032. Some additional conduct on the part of the defendant must be "purposefully directed" toward the forum state. *Id., citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985); *see also Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958) (minimum contacts must have basis in act by which defendant purposefully avails itself of forum state protections and laws). In *Asahi*, the Court indicated that "designing the product for the market in the forum State" would be sufficient to satisfy the minimum contacts analysis. 480 U.S. at 112–113, 107 S.Ct. at 1032–33.

Here, the inclusion of the statement "colors for U.S.A." on the Diamond Lollipop wrapper indicates an intention on the part of B.I.P. to take advantage of the American market. However, there is no indication that B.I.P. specially designed the Diamond Lollipop for the New York market. Thus, while B.I.P. may be said to have "purposefully availed" itself of the United States market by selling products labelled for the United States and selling to a United States wholesaler, there is no indication that it purposefully availed itself of the New York market.

Accordingly, Verburg cannot be held to be an agent of B.I.P. under § 302(a)(2), and thus B.I.P. is not subject to personal jurisdiction under New York law.

### Conclusion

For the foregoing reasons, B.I.P.'s motion to dismiss the complaint for lack of in personam jurisdiction under Rule 12(b)(2) is hereby granted.

It is so ordered.