Lillian **KERNAN** and Harold Kernan, Plaintiffs,

v.

**KURZ–HASTINGS, INC.**, Defendant.

**KURZ–HASTINGS, INC.**, Third–Party Plaintiff,

v.

**FORBES PRODUCTS CORPORATION** and Navitas Co., Ltd., Third–Party Defendants.

No. 95–CV–929H.

United States District Court, W.D. New York.

Feb. 10, 1998.

James W. Kirkpatrick, Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, Buffalo, NY, Patricia K. Fogarty, Serra & Fogarty, P.C., Belmont, NY, for Lillian Kernan and Harold Kernan.

Andrew Feldman, Gordon D. Tresch, Feldman & Kieffer, LLP, Buffalo, NY, for Kurz–Hastings, Inc.

Kevin M. O'Neill, Law Offices of Edward J. Kamysz, Buffalo, NY, for Forbes Products Corp.

Robert W. Littleton, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, Sheldon Hurwitz, Hurwitz & Fine, P.C., Buffalo, NY, for Navitas Co., Ltd.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

In accordance with 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings in this case, including trial and entry of final judgment. Third-party defendant Navitas Co., Ltd. ("Navitas") has moved to dismiss the action against it for lack of personal jurisdiction. For the following reasons, Navitas' motion is denied.

### BACKGROUND

On September 20, 1995, plaintiffs commenced this action in New York State Supreme Court, Allegany County, against Kurz–Hastings, Inc. ("Kurz–Hastings") for damages arising out of personal injuries allegedly sustained by plaintiff Lillian Kernan on October 15, 1992, while she was operating a hot stamping press during the course of her employment at Forbes Products Corporation ("Forbes") in Dansville, New York. On October 20, 1995, Kurz–Hastings (a Pennsylvania corporation) removed the action to this court on the basis of diversity jurisdiction.

Subsequently, on November 18, 1996, this court entered an order upon stipulation of the parties (Item 11) granting plaintiffs leave

to file an amended complaint setting forth causes of action against Kurz–Hastings based on theories of negligence, strict products liability, breach of warranty and loss of services for its alleged design, manufacture, assembly and marketing of the hot stamping press. On November 27, 1996, Kurz–Hastings filed a third-party complaint for contribution or indemnification against Forbes, as Ms. Kernan's employer, and against Navitas, the Japanese manufacturer of the press (Item 14). In the third-party complaint, Kurz–Hastings alleges that Navitas designed and manufactured the press machine which allegedly caused Ms. Kernan's injuries (*id.*, ¶ 14).

On March 11, 1997, Navitas filed an answer to the third-party complaint asserting several affirmative defenses, including lack of personal jurisdiction (Item 18). In its answer, Navitas "admits that it manufactured, partially designed, and assembled a product called HT–10L–PL Vertical Hot Stamping Press" (Item 18, ¶ "Sixth").

On April 3, 1997, in order to determine the factual basis for plaintiffs' jurisdictional allegations, Navitas served Kurz–Hastings with the following "Request for Admission:"

> **REQUEST FOR ADMISSIONS 1.** Neither Defendant/Third–Party Plaintiff KURZ–HASTINGS, INC., nor its attorneys have any evidence in admissible or potentially admissible form demonstrating that Third–Party Defendant NAVITAS CO. LTD. knew or reasonably should have known that the product which is alleged to be defective in this lawsuit was, or would be, sold in New York State.

Item 24, Ex. D). On May 19, 1997, Kurz–Hastings replied to this request as follows:

> Denied as stated. For some years prior to the sale of the equipment which is the subject of this lawsuit, Third–Party Defendant Navitas ... had maintained a relationship with Third–Party Plaintiff, Kurz–Hastings ... whereby Navitas authorized Kurz–Hastings to resell and distribute stamping foil machines such as the one at issue in this litigation throughout the United States and Canada, and on a number of occasions, Navitas in fact sold products to Kurz–Hastings for the purpose of such resale and distribution. Navitas had no reason to believe that the equipment it sold and delivered to a Pennsylvania corporation would remain in Pennsylvania, but rather knew or should have known that it could and would ultimately be delivered to and used in other states, including New York.

*Id.*, Ex. E).

On October 31, 1997, Navitas moved to dismiss the third-party complaint against it for lack of personal jurisdiction. According to the supporting affidavit of Navitas' corporate president Nubuo Arita, Navitas is a Japanese corporation with no significant contacts in New York (Arita Aff., attached to Item 24). Mr. Arita states that Navitas has never transacted or solicited business or provided any services in New York, and is not licensed or registered to do so. According to Mr. Arita, Navitas does not maintain an office, pay taxes, own property, or otherwise engage in any conduct in New York to show that it anticipated that it would be subject to the personal jurisdiction of a court in New York State. Mr. Arita states that Navitas had an oral agreement with Kurz–Hastings to manufacture the Model HT–10L–PL press (Arita Aff., ¶ 23), but "had no knowledge of what would become of the subject press machine after it was sold to Kurz–Hastings in Pennsylvania, beyond the general knowledge that Kurz–Hastings would resell it somewhere in Pennsylvania or one of the other 49 states in the United States" (*id.*, ¶ 26).

In response, Kurz–Hastings has submitted the affidavit of its vice president of sales Joseph D. McNamara (Item 26, Ex. A). Mr. McNamara states that the machine in question was sold to Forbes by Kurz–Hastings in January, 1979 (*see id.*, Ex. B). He further states that, on April 22, 1976, Kurz–Hastings entered a contract with Taihei Industries Co., Ltd., Navitas' corporate predecessor, under which Taihei granted Kurz–Hastings an exclusive right to sell and promote Taihei's products in the United States (*see id.*, Ex. C). Mr. McNamara also states that Navitas services its products sold in the United States by providing a credit for parts replaced up to 10 days after sale.

Additional documentation submitted by Kurz–Hastings includes a February, 1987, invoice for spare parts shipped by Taihei to Kurz–Hastings in Fullerton, California (Item 27, Ex. A); a May 26, 1987, fax from Kurz–Hastings to Taihei, and a return fax dated May 29, 1987, pertaining to a visit to California by Taihei's "top engineer" (*id.*, Ex. B); a Kurz–Hastings invoice dated March 20, 1986, for credit on spare parts returned to Taihei (*id.*, Ex. C); an August 20, 1986 fax from Taihei to Kurz–Hastings indicating that two Taihei employees had returned to Japan from a visit to an unspecified location in the United States (*id.*, Ex. D); a "service form" dated January 31, 1979, for warranty replacement of a "damaged control pack" at an unspecified location of Forbes Products (*id.*, Ex. E); documentation reflecting the change in name of Taihei Industries to Navitas, effective September 1, 1987 (*id.*, Ex. F); a list showing that 168 Taihei machines were sold by Kurz–Hastings between 1976 and 1981 (Item 28, Ex. A); and, documentation pertaining to the October, 1985 sale of a hot stamping press to Forbes, and delivery and service of the machine at Forbes' Tryon, North Carolina plant (*id.*, Ex. B).

Oral argument of the motion to dismiss was held before the undersigned on January 15, 1998. What follows is the court's ruling on Navitas' motion.

### DISCUSSION

#### A. Motion to Dismiss for Lack of Personal Jurisdiction.

In *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 508, 136 L.Ed.2d 398 (1996), the Second Circuit reviewed the analytical framework governing a motion to dismiss for lack of personal jurisdiction. *Id.* at 566–67; *see also Jones v. LaBofa A/S,* 1997 WL 642468, at *3 (N.D.N.Y. October 15, 1997). First, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir.1994). Where—as in this case—the parties have conducted discovery regarding the defendant's contacts with the forum state, but no evidentiary hearing has been held, "the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." *Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.), *cert. denied,* 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990), *quoted in Metropolitan Life, supra* at 568. The court must accept the averment of facts in the pleadings and motion papers as true, and resolve all doubts in the plaintiffs favor. *CutCo Industries, Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986).

Substantively, "the amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 223 (2d Cir.1963), *quoted in Metropolitan Life, supra,* 84 F.3d at 567. "Thus, in resolving questions of personal jurisdiction in a diversity action, a district court must conduct a two-part inquiry. First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." *Metropolitan Life, supra,* 84 F.3d at 567; *see also Chaiken v. VV Publishing Corp.,* 119 F.3d 1018, 1025 (2d Cir.1997). It is to this inquiry that the court now turns.

#### B. New York's Long–Arm Statute.

In this case, the parties agree that C.P.L.R. § 302(a)(3)(ii) provides the only basis for "long-arm" jurisdiction over Navitas in New York. That section provides:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or admin-

istrator, who in person or through an agent:

\* \* \* \* \* \*

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

\* \* \* \* \* \*

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce....

N.Y.C.P.L.R. § 302(a) (McKinney 1997). Since this section was not intended to reach the limits of long-arm jurisdiction allowed under the federal Constitution, *see In re DES Cases,* 789 F.Supp. 552, 569 (E.D.N.Y. 1992); *Banco Ambrosiano v. Artoc Bank & Trust, Ltd.,* 62 N.Y.2d 65, 71, 476 N.Y.S.2d 64, 464 N.E.2d 432 (1984), a separate analysis of statutory jurisdiction and constitutional due process is necessary. *Topps Co., Inc. v. Gerrit J. Verburg Co.,* 961 F.Supp. 88, 90 (S.D.N.Y.1997); *Saxholm AS v. Dynal, Inc.,* 938 F.Supp. 120, 125 (E.D.N.Y.1996). "Ordinarily, however, if jurisdiction is proper under [ § 302], due process will be satisfied...." *Topps, supra* (citing *Banco Ambrosiano, supra,* 62 N.Y.2d at 67–69, 476 N.Y.S.2d 64, 464 N.E.2d 432).

■ Four elements are necessary to a finding of personal jurisdiction under § 302(a)(3)(ii):

(1) defendant committed a tortious act outside the state, (2) defendant's tortious activity caused injury to a person within the state, (3) defendant should reasonably have expected the act to have consequences in the state, and (4) defendant derives substantial revenue from interstate or international commerce.

*Cortlandt Racquet Club, Inc. v. Oy Saunatec, Ltd.,* 978 F.Supp. 520, 523 (S.D.N.Y.1997); *see also Berardi v. Dah Yang Industry Co., Ltd.,* 1995 WL 5862 (S.D.N.Y. January 6, 1995); *Fantis Foods, Inc. v. Standard Importing Co., Inc.,* 49 N.Y.2d 317, 325, 425 N.Y.S.2d 783, 402 N.E.2d 122 (1980). The dispute on this motion is focused on the third element: whether Navitas should reasonably have expected that, by manufacturing the hot stamping press machine in Japan, and selling it to Kurz–Hastings in Pennsylvania for distribution throughout the United States, it would be subject to suit in a court in New York State.

The "reasonable expectation" test is an objective rather than a subjective one, and is not satisfied by "[t]he mere likelihood that a product will find its way into the forum state...." *Cortlandt Racquet Club, supra* (citing *Asahi Metal Ind. v. Superior Court of California, Solano County,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)); *see also Allen v. Auto Specialties Mfg. Co.,* 45 A.D.2d 331, 357 N.Y.S.2d 547 (3rd Dept.1974). As stated in *Cortlandt Racquet Club:*

[M]ere foreseeability of in-state consequence and failure to avert that consequence is not sufficient to establish personal jurisdiction under [C.P.L.R. § 302(a)(3)(ii) ]. To serve as a basis for jurisdiction, foreseeability must be coupled with a purposeful act invoking the benefits and protections of New York law.

*Cortlandt Racquet Club, supra* (citing *Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295 (S.D.N.Y.1996)), *aff'd,* 126 F.3d 25, 1997 WL 560048 (2d Cir.1997).

Navitas cites the New York case of *Schaadt v. T.W. Kutter, Inc.,* 169 A.D.2d 969, 564 N.Y.S.2d 865 (3rd Dept.1991), in support of its argument that plaintiffs have failed to establish a prima facie case for the exercise of long-arm jurisdiction under C.P.L.R. § 302(a)(3)(ii). In *Schaadt,* the plaintiff brought a products liability action in New York against the German manufacturer of a meat packing machine. She also sued the Massachusetts company which sold the machine in the United States. The court granted the manufacturer's summary judgment motion made after discovery, finding that the plaintiff had failed to come forward with evidence of the manufacturer's "discernible effort to directly or indirectly serve the New York market." *Id.,* 169 A.D.2d at 970, 564 N.Y.S.2d at 866. Instead, the record showed that the manufacturer was neither registered nor authorized to do business in New York,

had no property, bank accounts, offices or employees located in New York, and was therefore not subject to suit in the New York courts.

Kurz–Hastings cites the later case of *Kappas v. T.W. Kutter, Inc.*, 192 A.D.2d 402, 596 N.Y.S.2d 361 (1st Dept.1993), in which the plaintiff brought a products liability action in New York against the same Massachusetts company that was sued in *Schaadt.* The Massachusetts company then brought a third-party claim against the same German manufacturer that was involved in *Schaadt.* The Kappas court found that the German manufacturer had entered a written agreement with the Massachusetts company establishing it as the exclusive distributor and promoter of the manufacturer's machine for all territories of the United States, including New York. This agreement, combined with the distributor's activity in servicing and repairing the machines sold in New York and the manufacturer's activity in warranting the machines, created genuine issues of fact precluding summary judgment in favor of the manufacturer on the ground of lack of personal jurisdiction. *Id.*, 192 A.D.2d at 402, 596 N.Y.S.2d at 362–63. The court also found that the intervening written contract materially altered the relationship between the manufacturer and the distributor so as to preclude the collateral estoppel effect of the prior determination in *Schaadt. Id.*, 192 A.D.2d at 403, 596 N.Y.S.2d at 363.

The principal factor distinguishing the different results reached by the Third Department in *Schaadt* and the First Department in *Kappas* was the nationwide distribution agreement between the German manufacturer and the Massachusetts seller. However, the court also noted that the distribution agreement was accompanied by evidence of the manufacturer's servicing and warranty activity in New York State.

Here, the evidence shows that the machine at issue was manufactured by Navitas in Japan and sold by Kurz–Hastings to Forbes in New York pursuant to an "exclusive sales rights" agreement between Navitas and Kurz–Hastings, covering the entire United States (Item 26, Ex. C). However, there is no evidence of service or warranty activity in New York State. Instead, the evidence shows only that a Kurz–Hastings employee replaced a damaged control pack on an H–10 machine at an unspecified Forbes plant in January, 1979 (Item 27, Ex. E), and that Kurz–Hastings sold Forbes a hot stamping press in October, 1985, which was delivered to Forbes' plant in North Carolina (Item 28, Ex. B).

Thus, the question in this case is whether a Pennsylvania corporation's agreement to sell a Japanese manufacturer's products in the United States, in and of itself, is sufficient to establish a *prima facie* case of "foreseeability ... coupled with a purposeful act" for long-arm jurisdiction over the Japanese corporation in New York under C.P.L.R. § 302(a)(3)(ii). This court's review of the pertinent caselaw suggests that this question can be answered in the affirmative.

For example, in *Adams v. Bodum, Inc.*, 208 A.D.2d 450, 617 N.Y.S.2d 316 (1st Dept. 1994), the Appellate Division found that a foreign coffee maker manufacturer's exclusive distributorship agreement with a domestic distributor, covering the entire United States, provided a sufficient basis for finding that the manufacturer should have reasonably expected that persons in New York would be purchasing and using its product. Similarly, in *Allen v. Auto Specialties Mfg. Co.*, 45 A.D.2d 331, 357 N.Y.S.2d 547 (3rd Dept.1974), the court found that the Michigan manufacturer of an allegedly defective truck stand "should have foreseen the forum consequences of its alleged tortious act by virtue of the fact that it had entered into agreements with agents to solicit business in New York and further solicited business by its own employees." *Id.*, 45 A.D.2d at 333, 357 N.Y.S.2d at 550. *See also Darienzo v. Wise Shoe Stores*, 74 A.D.2d 342, 427 N.Y.S.2d 831 (2nd Dept.1980) (nondomiciliary shoe manufacturer should have expected New York consequences from its manufacture of shoes because it was aware that a Tennessee distributor to which its shoes were shipped would distribute them to New York retailers); *American Network, Inc. v. Access America/Connect Atlanta, Inc.*, 975 F.Supp. 494, 498 (S.D.N.Y .1997) (nondomiciliary Internet service provider's statement on

**374**

home page that it could help customers "across the U.S." supported reasonable inference that publication of home page might have New York consequences, sufficient for § 302(a)(3)(ii) long-arm jurisdiction); *Jones v. LaBofa, supra,* 1997 WL 642468, at *3 (foreign chair manufacturer's distributorship agreements in the United States supported finding that manufacturer reasonably should have expected use of its chairs in New York).

In this case, as already discussed, the evidence shows that Kurz–Hastings sold the allegedly defective hot stamping press machine to Forbes in New York, pursuant to a nationwide "exclusive sales rights" agreement with Navitas. In addition, Mr. Arita admits in his affidavit that Navitas had an "oral" agreement to manufacture press machines for sale by Kurz–Hastings (Arita Aff., ¶ 23), and that Navitas had "general knowledge that Kurz–Hastings would resell [the machines] somewhere in Pennsylvania or one of the other 49 states in the United States" (*id.,* ¶ 26). This evidence is sufficient to establish a *prima facie* case of "foreseeability . . . coupled with a purposeful act" for long-arm jurisdiction over Navitas in New York, pursuant to C.P.L.R. § 302(a)(3)(ii).

The court now turns to the second part of the personal jurisdiction inquiry: whether the assertion of long-arm jurisdiction over Navitas comports with the requirements of due process.

## C. Due Process.

▉ The due process requirement for personal jurisdiction of a nondomiciliary in a federal court diversity action, enunciated by the Supreme Court in *International Shoe Company v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), protects a person without meaningful ties to the forum state from being subjected to binding judgments within its jurisdiction. *Id.* 326 U.S. at 316; *see Metropolitan Life, supra,* 84 F.3d at 567. By requiring "fair warning" that activities in a state may subject a person to suit in that state's courts, the due process clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct

will and will not render them liable to suit." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In order to determine whether the exercise of personal jurisdiction is proper, the court must determine, first, whether the defendant has sufficient "minimum contacts" with the forum state, and second, whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice"—that is, whether it is reasonable under the circumstances of the particular case. *See International Shoe, supra,* 326 U.S. at 316; *Metropolitan Life, supra,* 84 F.3d at 567–68.

### 1. Minimum Contacts.

▉ In *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Supreme Court considered the following question: whether an Oklahoma court could exercise personal jurisdiction over a non-resident automobile retailer and its wholesale distributor in a products liability action, "when the defendants" only connection with Oklahoma [was] the fact that an automobile sold in New York to New York residents became involved in an accident in Oklahoma. *Id.* 444 U.S. at 287. The holding in *World–Wide Volkswagen* has been repeatedly cited for the proposition that "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* at 298. In other words, a foreign corporation "purposefully avails" itself of a particular forum where the corporation places its products into interstate commerce and reasonably foresees that those products will be delivered into that forum. *Id.* at 297.

Notwithstanding the broad language of this standard, the Court clearly stated that, for purposes of due process analysis, merely placing a product into the "stream of commerce" does not by itself give rise to the requisite expectation that the product will enter a particular state. The Court specifically stated that " 'foreseeability' alone has never been a sufficient benchmark for per-

sonal jurisdiction under the Due Process Clause . . . ," *id.* at 295, precisely because "foreseeability," taken to its logical extremes, would permit every seller of a product to be amenable to suit wherever the product traveled. *Id.* at 296. Instead, the Supreme Court instructed that "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297. As stated by the Court:

> [I]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*Id.* at 297–98.

Subsequent to the *World–Wide Volkswagen* decision, the Supreme Court in *Asahi Metal Ind. v. Superior Court of California, supra,* attempted to clarify the scope of the "stream of commerce" language and its relationship to the "purposeful availment" prong of the minimum contacts inquiry. However, no majority in *Asahi* was able to conclusively establish an interpretation of what constituted "minimum contacts" in product liability cases. Instead, *Asahi* was decided on the ground that subjecting the foreign defendant to jurisdiction in California would violate the "reasonableness" prong of *International Shoe.* Justice Brennan, joined by Justices White, Marshall and Blackmun, concluded that the "stream of commerce" standard in products liability cases should be read as allowing jurisdiction over any manufacturer or retailer which places its product in the stream of commerce and is aware that its

product may be sold in the forum state. *Asahi, supra,* 480 U.S. at 116–17 (Brennan, J., concurring in part and concurring in the judgment). Justice O'Connor, joined by Chief Justice Rehnquist and Justices Powell and Scalia, rejected this broad interpretation and concluded that merely placing a product into the stream of commerce with knowledge that it may be swept into a particular forum, without more, is insufficient to find purposeful availment under the minimum contacts test. Instead, these Justices interpreted *World–Wide Volkswagen* as requiring an additional showing of some affirmative act by the defendant purposefully directed at the forum state. *Id.* at 112 (O'Connor, J.). Justice Stevens, the swing vote, ultimately joined with Justice O'Connor's opinion to the extent it decided the case on "reasonableness" grounds, but specifically disagreed with Justice O'Connor's treatment of the minimum contacts issue.

Since *Asahi,* the circuits have split over whether the "stream of commerce" standard in *World–Wide Volkswagen* requires a plaintiff to establish jurisdiction in products liability cases by showing affirmative conduct by the defendant purposefully directed at the forum. *See, e.g., Lesnick v. Hollingsworth & Vose Co.,* 35 F.3d 939, 945–46 (4th Cir.1994) (adopting Justice O'Connor's position), *cert. denied,* 513 U.S. 1151, 115 S.Ct. 1103, 130 L.Ed.2d 1070 (1995); *Boit v. Gar–Tec Products, Inc.,* 967 F.2d 671, 682–83 (1st Cir.1992) (same); *Falkirk Mining Co. v. Japan Steel Works, Ltd.,* 906 F.2d 369, 375 (8th Cir.1990) (same); *compare Dehmlow v. Austin Fireworks,* 963 F.2d 941, 947 (7th Cir.1992) (adopting Justice Brennan's position); *Irving v. Owens–Corning Fiberglas Corp.,* 864 F.2d 383, 385–86 (5th Cir.) (same), *cert. denied,* 493 U.S. 823, 110 S.Ct. 83, 107 L.Ed.2d 49 (1989).

The Second Circuit has not specifically adopted either interpretation of the *Asahi* case, but instead has taken an alternative approach to the "minimum contacts" inquiry. As explained in *Metropolitan Life,* the cases make a distinction between "specific" jurisdiction and "general" jurisdiction. "Specific jurisdiction exists when 'a State exercises personal jurisdiction over a defen-

dant in a suit arising out of or related to the defendant's contacts with the forum'; a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Metropolitan Life, supra* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 & nn. 8–9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

▮ The distinction is important because of the relative showing required to meet the minimum contacts test in each type of case. As stated in *Jones v. LaBofa A/S, supra*, "the court requires fewer contacts if the lawsuit arises out of or is related to the defendant's contacts with the forum ('specific jurisdiction') than if the plaintiff merely alleges that the defendant has general business contacts with the state ('general jurisdiction')." 1997 WL 642468, at *3. Thus, in a "specific jurisdiction" case, the plaintiff must make a *prima facie* showing "that the defendant has 'purposefully directed' his activities at residents of the forum," *Burger King, supra*, 471 U.S. at 472, and that "the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum." *Id.; see also In re Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 418 (10th Cir.1996); *Aerogroup International, Inc. v. Marlboro Footworks, Ltd.*, 956 F.Supp. 427, 439 (S.D.N.Y.1996). In contrast, because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's "continuous and systematic general business contacts" with the forum state. *Metropolitan Life, supra*, 84 F.3d at 568; *see also Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453 (10th Cir.1996); *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 481 n. 3 (3d Cir.1993); *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 380–81 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *Donatelli v. National Hockey League*, 893 F.2d 459, 462–63 (1st Cir.1990); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987).

This distinction is also critical to the outcome of Navitas' motion in this case. As explained in *Metropolitan Life*:

A reviewing court must first examine the defendant's contacts with the forum. If the same do not exist in sufficient abundance, that is, if the constitutionally necessary first-tier minimum is lacking, the inquiry ends. If, however, the minimum exists, the criteria catalogued by the [Supreme] Court [to evaluate reasonableness] must be assessed in order to determine the constitutionality, in the particular circumstances, of an exercise of jurisdiction.

*Metropolitan Life, supra*, 84 F.3d at 568, quoting *Donatelli v. National Hockey League, supra*, 893 F.2d at 465.

In this case, Kurz–Hastings has failed to make even a *prima facie* showing that Navitas has carried on "continuous and systematic general business contacts" with New York State to justify the exercise of general jurisdiction over Navitas. Indeed, the evidence suggests that Navitas' *only* significant contact with the forum was the 1979 purchase of the machine at issue (see Item 26, Ex. B). Accordingly, the question to be addressed is whether Kurz–Hastings has established a *prima facie* case of specific jurisdiction over Navitas.

The court has already found that Kurz–Hastings has made a *prima facie* showing that Navitas has purposefully directed its activities at residents of the forum by virtue of the "exclusive sales rights" agreement. Therefore, the question becomes whether the litigation results from alleged injuries that arise out of or relate to those activities. *See Burger King, supra*, 471 U.S. at 472; *see also Aerogroup International, Inc. v. Marlboro Footworks, Ltd., supra*, 956 F.Supp. at 439. This requirement is satisfied by a showing that the plaintiff would not have suffered the same injury in the absence of the defendant's contacts with the forum. *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 271–72 (9th Cir.1995); *Kuenzle v. HTM Sport-Und Freizeitgerate AG, supra*, 102 F.3d at 456–57.

Accepting as true Kurz–Hastings' factual claims as to its sales and distribution relationship with Navitas, the court concludes that Ms. Kernan's injury would not have occurred in New York in the absence of that relationship. The injury is alleged to have occurred as a result of the defective condition of the stamping press manufactured by Navitas. There is nothing in the record to suggest that Kurz–Hastings would have sold the press to Forbes and shipped it to New York had it not entered the agreement with Navitas.

In addition, as recognized by the Second Circuit in *Metropolitan Life*, the due process "minimum contacts" inquiry is similar to, and often "merges with," the "foreseeability plus purposeful act" test for determining statutory jurisdiction under the state's long-arm statute. *Metropolitan Life, supra,* 84 F.3d at 567; *see also Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295, 300–01 (S.D.N.Y. 1996) ("reasonable expectation" inquiry under C.P.L.R. § 302(a)(3)(ii) similar to due process "minimum contacts" inquiry); *Cortlandt Racquet Club, supra,* 978 F.Supp. at 523 & n. 2 (same). As discussed above, this court has already found that Kurz–Hastings has made out a *prima facie* case of long-arm jurisdiction over Navitas pursuant to C.P.L.R. § 302(a)(3)(ii).

Likewise, I find that Kurz–Hastings has met its *prima facie* burden of showing sufficient minimum contacts for the court to exercise personal jurisdiction over Navitas. The court now turns to the final prong of the due process analysis.

**2. Reasonableness.**

■ The second stage of the due process inquiry asks whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice"— that is, whether it is reasonable under the circumstances of the particular case. See *International Shoe, supra,* 326 U.S. at 316; *Metropolitan Life, supra,* 84 F.3d at 568. The Supreme Court has held that the court must evaluate the following factors as part of this "reasonableness" analysis: (a) the burden that the exercise of jurisdiction will impose on the defendant; (b) the interests of the forum state in adjudicating the case; (c) the plaintiff's interest in obtaining convenient and effective relief; (d) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (e) the shared interest of the states in furthering substantive social policies. *Asahi, supra,* 480 U.S. at 113–14; *see also Burger King, supra,* 471 U.S. at 476–77; *World–Wide Volkswagen, supra,* 444 U.S. at 292; *Metropolitan Life, supra,* 84 F.3d at 573 (applying five-factor test of *Asahi); A.I. Trade Fin., Inc. v. Petra Bank,* 989 F.2d 76, 83 (2d Cir.1993).

■ While the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the defendant presents "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King, supra,* 471 U.S. at 477. As explained in *Metropolitan Life* :

[T]he two components of the due process inquiry are related inasmuch as both originated in the idea that a court cannot subject a person to its authority where the maintenance of the suit would offend "traditional notions of fair play and substantial justice." Thus, in assessing whether it may exercise jurisdiction over a particular defendant, a court must weigh the relative strengths and weaknesses of each requirement—that is, depending upon the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry.

*Metropolitan Life, supra,* 84 F.3d at 568.

The court now turns to an evaluation of the "reasonableness" factors.

**a. The burden that the exercise of jurisdiction will impose on the defendant.**

It is undisputed that the exercise of jurisdiction by this court would impose a considerable burden on Navitas. As recognized by Justice O'Connor in Part II(B) of her decision in *Asahi,* in which all of the other jus-

tices joined, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi, supra,* 480 U.S. at 114. Similar to the situation in *Asahi,* Navitas faces the prospect of not only designating a person with knowledge of the design and manufacture of the allegedly defective machine "to traverse the distance between [its] headquarters in Japan and the [Western District of New York], but also to submit its dispute with [Kurz–Hastings] to a foreign nation's judicial system." *Id.*

"On the other hand, the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." *Metropolitan Life, supra,* 84 F.3d at 574. In addition, Navitas does not forcefully challenge the likelihood that, even if it is successful on this motion, it would be subject to personal jurisdiction in a separate indemnification action brought by Kurz–Hastings in some other United States federal court, probably in the Eastern District of Pennsylvania.

Therefore, although this factor weighs in favor of Navitas, "taken alone, it falls short of overcoming [Kurz–Hastings'] threshold showing of minimum contacts." *Id.*

### b. The interests of the forum state in adjudicating the case.

As in *Jones v. LaBofa, supra,* the state's interest is a strong one here "because plaintiffs are state residents and their injuries impact on strong state policies regarding product liability. Moreover ... it is logical to apply New York products liability and negligence law to the injury of a New York plaintiff in New York." 1997 WL 642468, at *7. Accordingly, this factor weighs in favor of Kurz–Hastings.

### c. The plaintiffs' interest in obtaining convenient and effective relief.

Although the parties have not submitted any information on this motion to aid the

court in assessing this factor, it is hardly a matter of dispute that the plaintiffs have a strong interest in obtaining relief in a convenient and effective manner. Requiring Kurz–Hastings to bring a separate contribution/indemnification action against Navitas in another forum, and the accompanying potential for additional cost and delay, would present a significant counterbalance to this interest. This factor weighs in favor of Kurz–Hastings.

### d. The interstate judicial system's interest in obtaining the most efficient resolution of the controversy.

"In evaluating this factor, courts generally consider where witnesses and evidence are likely to be located." *Metropolitan Life, supra,* 84 F.3d at 574. In addition, "[t]he locus of the alleged tort, and New York, plaintiff[s'] domicile, have far more significant interests in resolving the dispute" than, for example, Pennsylvania. *Id.* at 574–75.

The allegedly defective machine is located in New York, the site of the accident.[1] While the design and manufacturing processes may have taken place in Japan, the primary evidence pertaining to these processes is likely to be documentary. The available information suggests that Kurz–Hastings employees performed most of the repair work on the Navitas machines sold in the United States, and it is reasonable to infer that Kurz–Hastings would have possession of, or access to, drawings, specifications or other relevant information about the machine. Accordingly, this factor weighs in favor of Kurz–Hastings.

### e. The shared interest of the states in furthering substantive social policies.

The parties have not suggested, nor have they shown, how any substantive social policies would be furthered or impeded by permitting the dispute between Kurz–Hastings and Navitas to be heard in this court. However, as recognized by the court in *In re DES* Cases, "[b]ecause jurisdictional due pro-

---

1. Again, while the parties have not submitted any information on this motion to aid the court in assessing the weight to be given this factor, no

one has suggested that the machine has been moved from the Forbes plant in Dansville, New York, where the alleged injury occurred.

cess allows many foreign manufacturers to circumvent the American courts altogether, United States residents often will be unable to avail themselves of the strong protections of American tort law. Foreign manufacturers also gain a competitive advantage." *In re DES Cases, supra,* 789 F.Supp. at 575.

Upon consideration of these factors, I find that the balance tips in favor of the exercise of personal jurisdiction over Navitas. Furthermore, upon consideration of the relative strength and weaknesses of Navitas' contacts with the forum state and the reasonableness of subjecting Navitas to suit in this court, I find that it would not be contrary to "traditional notions of fair play and substantial justice" to allow Kurz–Hastings' third-party action against Navitas to proceed here. The case is admittedly a close one. However, in the final analysis, Navitas has simply failed to present "a compelling case" of unreasonable circumstances to overcome the finding that it purposefully availed itself of a New York forum by virtue of its nationwide "exclusive sales" agreement with Kurz–Hastings.

### CONCLUSION

Based on the foregoing, Navitas' motion to dismiss the third-party action against it for lack of personal jurisdiction (**item 24**) is denied.

**SO ORDERED.**