Pigott, J.
(dissenting). CPLR 302 (a) (1) does not confer personal jurisdiction over a foreign bank when, as in this case, the bank’s only connection to New York is the maintenance of a New York correspondent account and the passive receipt of payments into that account, at the unilateral direction of third parties. The majority’s contrary conclusion is based on a misreading of Licci v Lebanese Can. Bank, SAL (20 NY3d 327 [2012]), in which we held that a foreign bank was subject to personal jurisdiction because it deliberately and repeatedly wired money through its New York correspondent account into the hands of Hizballah, to effect terrorist goals shared by the bank. In ignoring the significant distinctions between Lied and this case, the majority risks upending over 40 years of precedent that holds the mere maintenance of a New York correspondent account is insufficient to assert personal jurisdiction over a foreign bank. Accordingly, I dissent.
New York’s long-arm statute authorizes a court to exercise personal jurisdiction over any non-domiciliary who transacts business within the state, if the cause of action arises from such acts (see CPLR 302 [a] [1]). “Although it is impossible to precisely fix those acts that constitute a transaction of busi *340 ness, our precedents establish that it is the quality of the defendants’ New York contacts that is the primary consideration” (Fischbarg v Doucet, 9 NY3d 375, 380 [2007]). Specifically, we look for “[p]urposeful activities” in which a party, “through volitional acts, avails itself of the privilege of conducting activities within the forum State” (id. [internal quotation marks omitted]). For example, in Fischbarg, we upheld the exercise of personal jurisdiction over out-of-state defendants who had retained an attorney in New York to represent them in a foreign proceeding, because they “projected themselves into our state’s legal services market” and, “on their own volition,” chose to utilize the plaintiff’s services (id. at 382).
So, too, in Lied, the foreign bank projected itself into this State by affirmatively and deliberately transferring money on behalf of a client, through its New York correspondent account, to Hizballah (see 20 NY3d at 340). The evidence in Lied established that the bank “could have . . . processed U.S.dollar-denominated wire transfers for the Shahid account through correspondent accounts anywhere in the world,” yet it “deliberately chose to process the many Shahid wire transfers through AmEx in New York” (Licci ex rel. Licci v Lebanese Can. Bank, SAL, 732 F3d 161, 171 [2d Cir 2013] [emphasis added]). What is more, the bank in Lied transferred the funds through its New York account “to effect its [the bank’s] . . . shared terrorist goals” (Licci, 20 NY3d at 340 [emphasis added]).
“Not all purposeful activity, however, constitutes a transaction of business within the meaning of CPLR 302 (a) (1)” (Fischbarg, 9 NY3d at 380 [internal quotation marks omitted]). In stark contrast to Lied, the foreign bank in Amigo Foods Corp. v Marine Midland Bank-N.Y. was held not to have purposefully availed itself of the privilege of conducting activities in New York where it maintained a New York correspondent account and had “passively and unilaterally been made the recipient of funds which [,] at its customer’s direction [,] it ha[d] declined” (61 AD2d 896, 897 [1st Dept 1978], affd for reasons stated 46 NY2d 855 [1979]). A depositor’s “unilateral choice” to deposit money into the bank’s account did not suddenly transform a correspondent banking relationship into the kind of volitional act that is required under the long-arm statute (id.).
If there were any confusion as to the meaning of our decision in Amigo Foods, we put it to rest in Lied. There, we clarified that
*341 “Amigo Foods [is] best read as standing for the proposition that the first prong of the long-arm jurisdiction test . . . may be satisfied by the defendant’s use of a correspondent bank account in New York, even if no other contacts between the defendant and New York can be established, if the defendant’s use of that account was purposeful” (Licci, 20 NY3d at 338, quoting Licci ex rel. Licci v Lebanese Can. Bank, SAL, 673 F3d 50, 66 [2d Cir 2012]).
We described the bank’s use of its correspondent account in Amigo Foods as “essentially adventitious—i.e., it was not even [the bankfs doing,” whereas the bank’s actions in Lied—knowingly and unlawfully transferring funds to Hizballah on its client’s behalf to accomplish the bank’s terrorist goals— demonstrated the kind of purposeful availment contemplated by CPLR 302 (a) (1) (id. at 338, 340 [emphasis added]).
Our decision in Lied thus confirmed the rule, based in prior case law, that something more than the mere receipt of funds in a New York correspondent account is required in order to assert personal jurisdiction over a foreign bank (see Faravelli v Bankers Trust Co., 59 NY2d 615, 618 [1983], affg for reasons stated 85 AD2d 335, 339 [1st Dept 1982] [foreign bank not subject to personal jurisdiction under the long-arm statute where it directed a New York bank to remit payment from a purchase contract to the foreign bank’s New York correspondent account]; Nemestky v Banque De Developpement De La Republique Du Niger, 48 NY2d 962, 964 [1979] [foreign bank’s maintenance of a New York correspondent account was insufficient to assert personal jurisdiction, even if bank’s guarantee of the trade acceptance upon which plaintiff brought suit arose from the bank’s correspondent banking relationship]; cf. Banco Ambrosiano v Artoc Bank & Trust, 62 NY2d 65, 70 [1984] [plaintiff conceded lack of personal jurisdiction over foreign bank whose only contact with New York was maintenance of a New York correspondent account into which the funds that were the subject of the action were deposited]).[1]
*342 Rather, a foreign entity must initiate purposeful contact with New York, beyond the mere maintenance of a correspondent account, in order for its relationship with a New York bank to form the basis for the exercise of personal jurisdiction (see 20 NY3d at 338-339; Ehrlich-Bober & Co. v University of Houston, 49 NY2d 574, 581-582 [1980] [public university in Texas that maintained a correspondent account in New York subject to personal jurisdiction because it had solicited the funds that were the subject of the action and specifically directed that they be placed in the account]). Accordingly, the foreign bank in Indosuez Intl. Fin. v National Reserve Bank (98 NY2d 238 [2002]) was subject to personal jurisdiction where the bank itself entered into numerous contracts with the plaintiff and specified that payments under those contracts were to be made into the bank’s New York account, for the benefit of the bank. Unlike the foreign bank in Amigo Foods, whose only contact with New York was the maintenance of a correspondent account into which other parties unilaterally chose to deposit funds, the foreign bank in Indosuez was itself a party to the contract that had required payments to be made into its correspondent account (id. at 246-247). The bank had also expressly designated New York as the place of performance and submitted to New York jurisdiction in six of its agreements (id.).
Here, defendants’ sole connection to New York was the maintenance of a correspondent account at Citibank, N.A., into which third-party vendors deposited funds that were alleged to be the proceeds of bribes and kickbacks obtained by foreign “corrupt employees” in connection with a Saudi Arabian construction project. Although plaintiffs generally alleged that defendants knew about the employees’ unlawful activities overseas and helped them to set up a company in the British Virgin Islands, with bank accounts in Geneva, plaintiffs have not identified any volitional act on the part of defendants that was directed at New York.
Indeed, the only intentional conduct alleged in the complaint that relates in any way to New York was carried out by the foreign employees—who directed the vendors to wire the bribes and kickbacks to “Citibank NA, New York, in favour of ‘Pictet and Co. Bankers Geneva,’ for the credit of” the employees’ overseas account—and the vendors, who followed that direction. Nowhere is it alleged that defendants “orchestrated the laundering of funds ... to Pictet’s New York correspondent *343 bank account” (majority op at 320), or that “the vendors’ choice to deposit money in New York was . . . part of defendant’s design” (majority op at 328), as it was in Licci (see Licci, 732 F3d at 171 [bank “deliberately chose” to process the transfers through AmEx in New York]).[2]
Like the foreign bank in Amigo Foods, Pictet has not wired money through its New York correspondent account, nor has it initiated any other contact with the forum state such as the kind we found dispositive in Lied and Indosuez. Even accepting as true all of the facts alleged in the amended complaint, Pictet was nothing more than an “adventitious” recipient of money that had been transferred into its account at the unilateral direction of foreign nationals, which is insufficient under section 302 (a) (1) to exercise personal jurisdiction over a foreign bank.
The majority’s interpretation of Lied and, consequently, its determination that Pictet’s receipt of funds at the direction of others constitutes the purposeful transaction of business in New York, is a complete about-face from the rule that we established in Amigo Foods, and to which foreign banks have fashioned their conduct for over four decades—namely, that maintenance of a New York correspondent account, standing alone, will not subject them to jurisdiction in this state. The majority’s retreat from that principle eschews the clear and predictable rules that are important in this area of the law, and will have grave implications for correspondent banking relationships, which “facilitate the flow of money worldwide, often for transactions that otherwise have no other connection to New York, or indeed the United States” (Licci, 20 NY3d at 338).[3]
Judges Abdus-Salaam, Fahey and Garcia concur, Judge Garcia in a concurring opinion in which Judge Abdus-Salaam concurs; Judge Pigott dissents and votes to affirm in an opinion in which Chief Judge DiFiore and Judge Stein concur.
*344 Order reversed, with costs, and case remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein.

. The majority’s reliance on Banco Ambrosiano is misplaced (majority op at 326). Our decision in that case was limited to an analysis of quasi in rem jurisdiction, as the plaintiff had conceded that personal jurisdiction was lacking (62 NY2d at 69-70). We cited Banco only once in Lied, as an example of a case in which we “discussed similar or related issues” involving a foreign bank’s use of a correspondent account (20 NY3d at 335).

. Because the plaintiffs failed to submit affidavits in opposition to the motion to dismiss that would suggest “facts essential to justify opposition may exist but cannot then be stated,” they have not satisfied the procedural requirements of CPLR 3211 (d) that would entitle them to further jurisdictional discovery.

. In light of my conclusion that defendants did not transact business in this state, I have no need to consider the sufficiency of plaintiffs’ allegations with respect to the second prong of the long-arm statute (see CPLR 302 [a] [1]) or whether the exercise of personal jurisdiction in this case satisfies due process (see Walden v Fiore, 571 US —, —, 134 S Ct 1115, 1121 [2014]).